(No. 50837.—

STEWART WARNER, DATAFAX CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Loretta H. Kopczynski, Appellee).

*Opinion filed June 1, 1979.—Rehearing denied September 28, 1979.*

Klohr, Braun, Lynch & Smith, Ltd., of Chicago (Mark

A. Braun, of counsel), for appellant.

Arnold & Kadjan, of Chicago (Michael Lee Tinaglia, of counsel), for appellee.

Loretta H. Kopczynski, *pro se.*

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission found that on January 23, 1973, while employed by respondent, Stewart Warner, Datafax Corporation, Frank J. Kopczynski sustained accidental injuries arising out of and in the course of his employment which caused his death, and pursuant to section 7 of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.7) awarded compensation to his widow, petitioner Loretta H. Kopczynski. On review, without hearing additional testimony, the Industrial Commission found that petitioner had failed to prove that the decedent sustained accidental injuries arising out of and in the course of his employment and set aside the decision of the arbitrator. On *certiorari* the circuit court of Cook County reversed the decision of the Commission and ordered that the decision of the arbitrator be reinstated. Respondent appealed. Supreme Court Rule 302(a) (58 Ill. 2d R. 302(a)).

On January 23, 1973, while at work, Frank Kopczynski died of a myocardial infarction. Kopczynski was 56 years old and for 14 years prior to his death had suffered from a diabetic condition. He was employed as a foreman of inspectors, which involved him in settling disputes between workers and foremen regarding the acceptability of piece parts manufactured by respondent. Kopczynski was paid a weekly salary plus time and a half for overtime.

Petitioner testified that on Friday evening, January 19, 1973, when Kopczynski returned from work, he was

visibly upset. Over objection she stated that her husband told her that he had had a conversation with his boss, Joseph Kubik, that they had discussed his salary and that Kubik had told the decedent that he would be placed on a semimonthly rather than a weekly payroll. At that time, semimonthly employees were not paid overtime. That evening the deceased smoked quite a lot and drank large quantities of coffee. He had very little appetite and talked very little at the table. She testified that he was edgy throughout the entire evening and had difficulty sleeping that night.

She testified that on Saturday and Sunday her husband seemed very preoccupied and did not have much of an appetite. On January 22, the following Monday, when the deceased returned home he was again very upset because he had had a second conversation with Kubik which confirmed the fact that he would go on a semimonthly payroll by the end of January. Petitioner stated that the decedent smoked "an awful lot" that evening and drank 8 to 10 cups of coffee. On January 23, 1973, she prepared his breakfast, but he did not eat anything before leaving for work.

Dr. Nathaniel Greenberg, a physician with a specialty in internal medicine, in response to a hypothetical question based upon the events preceding the decedent's death, expressed the opinion that the emotional distress during the four days prior to the decedent's death caused the myocardial infarction which proved fatal. He stated that the aggravation to the heart was caused by the following four factors: (1) the decedent was 56 years old; (2) his weight was in excess of 200 pounds; (3) he had a condition known as diabetes mellitus; and (4) he was subjected to four days of emotional distress. On cross-examination Dr. Greenberg testified that the emotional stress to which he referred concerned the decedent's apprehension about the loss of earnings.

Joseph Kubik testified that he was a quality control man and was the deceased's immediate superior. Kubik had no recollection of a conversation with Kopczynski concerning his salary at any time within two or three days of Kopczynski's death, or at any time within three months of his death. He stated that he may have had a general discussion with a group of foremen concerning a change from a weekly to a semimonthly payroll, but said that he placed no pressure on Kopczynski regarding the payroll change. He testified that he considered Kopczynski a friend and that at no time did he argue with him.

During Kubik's testimony the following ensued:

"THE ARBITRATOR: Is there much stress and strain being a foreman of thirteen or fourteen inspectors?

THE WITNESS: We have eleven, twelve individual foremen or laboratory supervisors, scale him 1 to 12, I would think his particular job was somewhere, 5 or 6.

Q. As far as stress and strain is concerned?

A. Yes, moderate."

Edward J. Walsh, called by respondent, testified that for some time prior to his death, Kopczynski had worked 10 hours a day, five days each week, and eight hours on Saturday. He knew that the deceased had had a discussion with his superior concerning the manner in which he was to be paid. In response to the arbitrator's inquiry as to whether there was any pressure connected with the decedent's work, he replied, "Well I guess there was a great deal of pressure but most of these, if there was a problem it was resolved."

There was testimony from other employees of respondent that on the date of his death Kopczynski was in a generally good mood and showed no outward manifestations of being upset or distressed. Edward Walsh testified that he had known Kopczynski for 20 to 25 years and he had not noticed anything unusual about him either during the three or four days prior to, or on the date of, his death.

Respondent contends that the evidence was contradictory both as to the alleged confrontation with respect to the change in the manner of the deceased's compensation and whether he suffered any emotional upset. It contends further that there is no competent evidence of any connection between the occurrences at the deceased's place of employment and his unusual conduct at home. Citing numerous authorities it argues that the decision of the Commission was not against the manifest weight of the evidence and the circuit court erred in reversing it.

Petitioner contends that the decision of the Industrial Commission was against the manifest weight of the evidence and that the circuit court correctly reversed the decision and reinstated the arbitrator's award.

This court has repeatedly held that the question whether there is a causal relationship between the employment and the injury is for the Industrial Commission; that the Commission is entitled to draw reasonable inferences from the evidence and that this court will not disregard them merely because other inferences might have been drawn. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10.) The decision of the Commission was not against the manifest weight of the evidence, and in holding that it was, the circuit court erred.

For the reason stated the judgment of the circuit court of Cook County is reversed and the decision of the Industrial Commission is reinstated.

*Judgment reversed.*