(No. 52391.— )

CUTHBERT D. LAMBERT, Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.* (Peabody Coal Co.,
Appellee).

*Opinion filed March 21, 1980.*

Harold G. Lindholm, of Lindholm & Williamson, of Peoria, for appellant.

Keefe & De Pauli, P.C., of East St. Louis, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Cuthbert D. Lambert, claimant in this workmen's compensation case, appeals from the judgment of the circuit court of Christian County confirming a decision of the Industrial Commission denying compensation. That decision affirmed an arbitrator who had found that claimant had failed to prove that his injuries arose out of and in the course of his employment or that his present condition was causally related to an alleged accident on October 18, 1973. The only issue is whether those decisions are contrary to the manifest weight of the evidence.

Before the arbitrator claimant testified that on October 18, 1973, he was employed by Peabody Coal Co. as a belt clean-up man. His job involved shoveling coal which fell off conveyer belts. At about 11 a.m. he slipped and fell backwards, his buttocks and lower back striking a 2-inch water pipe 3 or 4 inches off the ground. No one witnessed this, but claimant testified that he informed his shift foreman of the accident and received a report card which he took to the mine office. He did not request medical help and continued working until the next summer.

In the interim claimant visited Dr. Hagen twice concerning a lung ailment and Dr. DelValle, who was also the company doctor, three times in regard to a previous injury. In 1957 claimant had been in a slide in the mine and had both feet broken. He recovered and returned to work in the mine until 1967, when his left hip was crushed in another accident. Recovery from this injury required 4 years and two operations, the latter involving installa-

tion of an artificial hip joint. As a result he received compensation for 100% loss of the use of his left leg. Claimant returned to work in the mine as belt clean-up man in 1971. He testified that since his return he had received some "flak" regarding his injuries. During the three visits to Dr. DelValle claimant obtained medicine to relieve the pain in his leg. In none of the visits to Dr. Hagen or Dr. DelValle did claimant mention any problems with his back.

The mine closed down for vacation from June 22 until July 8, 1974. During this period claimant bid into a different job at the mine and obtained an authorization from one of the mine clerks to visit Dr. DelValle on June 28. During that visit claimant told the doctor about the October 18 incident, but the record does not indicate whether claimant said that he had back pains. The doctor's record of the visit refers only to problems with claimant's leg. The doctor examined him and X-rayed his left leg but found nothing wrong with it. Dr. DelValle gave claimant a return-to-work slip but also made an appointment for him to see Dr. William Schroeder on July 15. After vacation claimant returned to his old job for a few days and then went to his new job, belt vulcanizing, which was above ground for the most part. On one occasion, however, he had to go down into the mines and carry some heavy materials. He testified that after doing this he had more pain, but did not specify whether this was pain in his back or leg or both nor whether he reported this incident. He continued to work until he entered the hospital on July 17, 1974.

Claimant also introduced the deposition of Dr. Schroeder, who stated that claimant had been referred to him because of pains in his leg and back, and that claimant complained of pain in the lower back and left leg. The doctor also stated that he understood claimant had been involved in an accident around November of 1973. Dr. Schroeder hospitalized claimant on July 17 for further examination and an attempt at conservative treatment,

but the latter failed. A subsequent myelogram revealed extradural anterior pressure in the L4-L5 disc, and Dr. Schroeder performed a double lumbar laminectomy, which relieved some of the pain. The doctor further testified that coal miners are predisposed to back injuries and that claimant had a high tolerance for pain. He concluded that considering the absence of any back complaints before the incident around November of 1973, that accident either caused the back injury or aggravated an existing condition. He did not think that claimant's hip replacement had caused his back problems.

On cross-examination, Dr. Schroeder admitted that his notes of the July 15 examination refer only to pain in the left leg and that they do not contain a patient history or refer to any accident. Dr. Schroeder thought that claimant's fear of losing his job and his previous surgical experience motivated him to endure the pain in the months after the accident. Dr. Schroeder said that he had not compared his X rays with any previous X rays and admitted that some disc problems are not related to specific traumatic events. He could not say when the disc had ruptured. He thought that the hip replacement had reduced the pressure on claimant's back but admitted that the distortion caused by limping could cause a disc to rupture. Claimant's back problems were on the left side and there was nothing abnormal orthopedically or neurologically in the right lower back. Claimant was also overweight and this, too, can cause back problems. On redirect examination Dr. Schroeder testified that the symptomatology and prognosis of a total hip replacement are different than those for a double lumbar laminectomy.

At the hearing before the Commission, Peabody introduced the deposition of Dr. Marvin Mishkin. He testified that his examination of claimant revealed a long-term osteoarthritic degenerative change in the back. Claimant also had other musculoskeletal problems and disabilities, including the hip problem, which would be major contributing factors to the stress on his back.

Dr. Mishkin could not medically establish a causal relationship between a fall in October 1973 and the disc problems. He did think, however, that the later heavy-lifting incident mentioned by claimant suggested a causal relationship. On cross-examination Dr. Mishkin admitted that people have different pain tolerances but denied that surgery increases a patient's tolerance of pain. He said that claimant's work as a coal miner placed stress on his back over a long period of time and that, given the long-term degenerative change, he could not say whether the fall had an aggravating effect or a major or minor effect. Sometimes back pain cannot be related to a specific traumatic incident and sometimes patients have back pains for months before coming to a doctor.

Initially we note that an award in this case could not be based on either the long-term effect of mine work on claimant's back or the effect of the heavy-lifting incident. Section 6(c) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.6(c)) prohibits any claims under the Act unless the employee gives notice of his injury within 45 days of the accident. (See also *Ristow v. Industrial Com.* (1968), 39 Ill. 2d 410.) Nothing in the record indicates that claimant gave any notice regarding the heavy-lifting incident, and his application for adjustment of a claim refers only to the October 1973 fall. Claimant therefore cannot receive compensation under the Act on the basis of any injuries received in the heavy-lifting incident. Furthermore an employee is not entitled to compensation under the Act for the effects of prolonged stress on his body unless he can show an injury traceable to a specific time, place and cause. (*Bunney v. Industrial Com.* (1979), 75 Ill. 2d 413; *International Harvester v. Industrial Com.* (1973), 56 Ill. 2d 84; *Gould National Batteries, Inc. v. Industrial Com.* (1966), 34 Ill. 2d 151.) Therefore the long-term effects of work-related stress on claimant's back are not compensable under the Act unless he can show that his bodily structure gave way at a specific place and time.

Claimant contends that his injury occurred when he fell and struck his back on the water pipe on October 18, 1973. The determination whether this incident caused his present condition required the Commission to evaluate the conflicting medical evidence. (*Pathfinder Co. v. Industrial Com.* (1976), 62 Ill. 2d 556; *Johns-Mansville Corp. v. Industrial Com.* (1975), 60 Ill. 2d 221; *Laclede Steel Co. v. Industrial Com.* (1955), 6 Ill. 2d 296.) We will not reverse such a factual determination by the Commission unless it is against the manifest weight of the evidence. *Board of Trustees v. Industrial Com.* (1973), 55 Ill. 2d 293; *Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32.

Claimant points out that proof of good health before an accident and bad health afterwards creates an issue of fact as to the causal relationship between the accident and the subsequent condition. (*A. O. Smith Corp. v. Industrial Com.* (1977), 69 Ill. 2d 240.) That principle, however, can scarcely benefit claimant, with his prior injuries and preexisting problems. In any event, evaluation of the causal relationship was the Commission's responsibility, and it was resolved against claimant. Given the fact that claimant did not complain of back problems until 9 months after his fall, even though he had seen doctors for other problems on five occasions in the interim, the earlier severe injuries and resulting disabilities, and the differing reports of the three doctors, it is apparent that the Commission's findings are not contrary to the manifest weight of the evidence.

The judgment of the circuit court of Christian County is accordingly affirmed.

*Judgment affirmed.*