(Nos. 52764, 52774 cons.—

THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Beatrice L. Robinson, Appellee).

*Opinion filed January 20, 1981.*

476

SIMON, J., took no part.

Michael J. Murray, of Chicago (Richard E. Girard and John L. Wren, of counsel), for appellant.

Beatrice L. Robinson, *pro se.*

MR. JUSTICE RYAN delivered the opinion of the court:

These consolidated workmen's compensation cases are before us on direct appeal from the circuit court of Cook County pursuant to our Rule 302(a). 73 Ill. 2d R. 302(a).

Beatrice L. Robinson, claimant, was employed by the board of education of the city of Chicago in March 1971 as a stenographer in the legal department. She filed two applications for adjustment of claims *pro se* with the Industrial Commission. The claims were heard together in a prolonged series of hearings before three different arbitrators. Although the applications were filed *pro se,* the claimant was represented by counsel during most of the hearings. However, before their conclusion, she discharged her attorney and proceeded *pro se.* Although the claims

were heard as a consolidated case, the arbitrator issued two separate findings and orders as did the Industrial Commission on review. In this opinion we will refer to the two claims as the 1971 claim and the 1972 claim.

As to the 1971 claim, the arbitrator found that the claimant had suffered accidental injuries arising out of and in the course of her employment on the 1st, 20th, and 29th days of October and on the 14th day of December 1971. The claimant was awarded 7 4/7 weeks of compensation for temporary total disability and 43½ weeks of compensation as permanent disability for 10% loss of use of her right arm and 10% loss of use of her right leg. She was also awarded $1,200.72 medical expenses. In the 1972 case the arbitrator found that the claimant had suffered an accidental injury arising out of and in the course of her employment on October 3, 1972, and awarded her 64 weeks of compensation for temporary total disability. Although the arbitrator found that the necessary medical expenses had not been provided by the employer, no order was made with regard to the payment of them.

On review of both of the cases, the Industrial Commission, by way of adjustment, set aside the awards of the arbitrator. In both cases it found that the claimant had suffered accidental injuries on the same dates that the arbitrators had found. However, the awards for 10% permanent loss of use of the right arm and right leg were removed from the award in the 1971 case and added to the award in the 1972 case. Thus in the 1971 case the Commission found that the claimant suffered accidental injuries on the 1st, 20th, and 29th days of October and the 14th day of December 1971, and besides the medical expenses, awarded her 7 4/7 weeks of compensation for temporary total disability. In the 1972 case, the Commission found that the claimant suffered an accidental injury on October 3, 1972, and awarded her 64 weeks' compensation for temporary total disability and 43½ weeks of com-

pensation for 10% permanent loss of use of her right leg and 10% loss of use of her right arm. The Commission likewise made no award for medical expenses in the 1972 case. The circuit court of Cook County confirmed the award as to the 1971 case, but reversed the award as to the 1972 case.

While it is primarily within the province of the Industrial Commission to determine the credibility of the witnesses and to determine issues of fact, it is nevertheless the duty of the court to weigh and consider evidence in the record, and if it is found that the decision of the Commission is against the manifest weight of the evidence, it will be set aside. (*Corn Products Refining Co. v. Industrial Com.* (1955), 6 Ill. 2d 439, 443.) The burden is upon the claimant to establish the essential elements of her claim by a preponderance of credible evidence, particularly the prerequisite that her injury arose out of and in the course of her employment. (*Hannibal, Inc. v. Industrial Com.* (1967), 38 Ill. 2d 473, 475.) Even though there is evidence in the record which, if undisputed, would sustain the claim, such evidence is not sufficient if, on a consideration of all the testimony and circumstances shown in the record, it appears that the manifest weight of the evidence is against such finding. (*Corn Products Refining Co. v. Industrial Com.* (1955), 6 Ill. 2d 439, 443; *State House Inn v. Industrial Com.* (1965), 32 Ill. 2d 160, 164.) Although the testimony of the claimant standing alone is sufficient to sustain an award, that testimony must be considered with all the evidence in the record. The burden of proof is upon the claimant, and unless the evidence, considered in its entirety, shows the injury arose out of and in the course of the employment, there is no right to recover under the Act. (*Revere Paint & Varnish Corp. v. Industrial Com.* (1968), 41 Ill. 2d 59, 63.) The established principles of compensation law stated in these cases compel us to hold that the decisions of the Industrial Commis-

sion in both the 1971 case and the 1972 case were against the manifest weight of the evidence.

It is difficult to determine the nature of the injuries for which the claimant seeks to recover and the circumstances in which they were incurred. In her application for adjustment of claim in the 1971 case, she referred to "incident - injuries," and not accidental injuries over a three-month period and alleged that she was "verbally assaulted" by various coemployees. Her testimony covers a wide range of complaints. She testified that she was overtrained and overexperienced for the job and was a speedy typist. According to her testimony, the other stenographers in the pool were inefficient. She contends that there was a conspiracy among the other stenographers. She said that they were vulgar and would stand over her and shout, using obscene and racist language, bump against her typewriter and even exchange her "fast typewriter" for a "broken-down" one, all in order to harass her and lessen her work efficiency.

Claimant alleges that, as a result of these verbal assaults and harassments, she suffered extreme nervousness. In *Pathfinder Co. v. Industrial Com.* (1976), 62 Ill. 2d 556, this court reviewed its previous holdings where recovery had been allowed under the Workmen's Compensation Act for psychological disabilities, noting that in those cases recovery had only been allowed where the psychological disability arose from an accident that also involved physical contact or injury. In *Pathfinder,* this court, for the first time, allowed recovery on the basis of a psychological injury alone. There is in our case simply no evidence that will support a claim for a psychological disability under either the holding in *Pathfinder* or the decisions of this court prior to that case. The claimant's testimony was the only evidence as to her physical injuries. Her complaints are all subjective, and there is no objective evidence of any injury or disability. Likewise, her testi-

mony is the only evidence that connects her nervous disorder with her employment.

In the 1971 case the Commission found that the plaintiff sustained accidental injuries on four dates: October 1, 20, and 29, and December 14, 1971. The evidence concerning the occurrences on these dates is conflicting. The claimant contends that on October 1, 1971, she was in the library of the legal department of the board of education talking on the telephone to an attorney about a "very important matter" when her supervisor, Mrs. Loretta Mikula, shouted and screamed at her to get off the telephone and to go to take dictation from one of the attorneys in the office. She stated that Mrs. Mikula followed her down the hall to the attorney's office and stood outside of the door shouting at her until another attorney came out of his office and told Mrs. Mikula to leave. This attorney then explained to the claimant that Mrs. Mikula acted this way because she hated her. Mrs. Mikula testified that she did tell the claimant to take dictation from one of the attorneys and that she had to go back to the claimant a second time and ask her to hang up the phone and take dictation, but that she did not shout at her and she did not follow her down the hall to the attorney's office. Also, the attorney for whom the claimant was to take dictation and the attorney who supposedly told Mrs. Mikula to leave denied hearing any commotion. Claimant said that on this date there was no physical contact between her and Mrs. Mikula.

On October 20, 1971, the claimant stated that she was approaching the door to the room where the Xerox machine was kept when Mrs. Mikula stood in the doorway blocking her passage. Mrs. Mikula said nothing, but as the claimant attempted to go through the door, she struck the claimant on the right arm with her elbow and kicked her. As a result the claimant's right arm and right leg were sore. She also stated that the next day her back hurt her.

Mrs. Mikula testified that she could not recall standing in the door, or striking the claimant.

On October 29, 1971, the claimant contends, an attorney in the office asked her to make some copies of a large volume of work on the Xerox machine. She contends that while she was doing so she was interrupted several times by other people in the office and had to stand on her feet three hours or more. This, she contends, caused her to suffer pain in the left side of her abdomen. On different occasions she related the pain in her left side to "where the tubes are." Mrs. Mikula testified that she was the one that had assigned the work to the claimant to be copied on the Xerox machine on October 29. She stated the work consisted of only about 120 pages and should have taken about one hour to copy. This is work that was normally done by the stenographers, and they were not required to stand up all the time but could take a break if one became necessary.

The claimant alleges in her application for adjustment of claim that on December 14, 1971, she was forced to type standing up and was subjected to verbal assault as a result of which she suffered extreme nervousness and sustained a painful backache. There is very little, if any, testimony specifically relating to December 14, although there were vague references injected into the testimony concerning other alleged incidents with regard to being required to type standing up.

All of these occasions involved what the claimant has described as verbal assaults and harassments, which, she contends, made her nervous. We have read this entire record, which is quite lengthy and very difficult to follow, and find nothing in it that will support recovery for a nervous disorder or psychological disability brought about by such conduct alone. The evidence does not prove that the claimant has suffered "a sudden, severe emotional shock traceable to a definite time, place and cause which

causes psychological injury or harm," which this court held in *Pathfinder* constituted an accidental injury within the meaning of the Act. (62 Ill. 2d 556, 563.) The same must be said of any alleged nervous disorder that may have been associated with a physical injury. The claimant has not proved that her nervous disorders arose out of and in the course of her employment or that they were the consequence of an accidental injury. We reach the same conclusion concerning the claimant's alleged physical injuries. Her proof in this regard relates to injuries she claimed she received on October 20, when Mrs. Mikula allegedly struck and kicked her, injuring her right arm, right leg and lower back. She also relates the pain in her left side ("where the tubes are") to having to stand on her feet three hours in the Xerox room on October 29. Also, supposedly, being required to type standing up on December 14 caused her to have a backache.

Although the claimant has consulted with, been examined by, and received treatment from numerous doctors, none of the reports of doctors or hospitals that were admitted into evidence lends any support to her contentions. Just two days after the incident on October 29, the claimant was hospitalized in Jackson Park Hospital under the care of Dr. Maynard Shapiro. She had been referred before that date to Dr. Shapiro by the Arthritis Foundation. Dr. Shapiro examined the claimant on October 23 and had her admitted to the hospital on October 31. Although the claimant testified that she did not have the pain of which she now complains before October 1, 1971, the history sheet of the hospital record under date of November 2, 1971, states: "pain and stiffness in all joints and muscles on right side of body off and on for last two years, stiffness in joints is more or less every day, particularly right elbow, small joints in the hands, shoulders, neck, right knee and calf muscles." Also, the history states: "lower abdomen pain (says due to over-

exertion and nervousness tension) off and on for seven years." Thus, evidence in the record shows that the claimant had the pains which she now contends are attributable to alleged accidents on October 20, 29, and December 14, long before her employment by the board of education.

The claimant was discharged from the hospital on November 5, 1971, "in satisfactory condition." Though the records reflect that at the time of her treatment she was employed by the board of education, nowhere in the hospital records or in Dr. Shapiro's records is there any mention of any work-related cause for her complaints. Dr. Shapiro was the claimant's doctor and had not examined her for the respondent. On the physician's service report, which Dr. Shapiro filled out for the Blue Shield plan of Illinois Medical Service, there is a question "Is this a Workmen's Compensation Case?" There are boxes to be checked for yes, no, and possibly. The "no" box has been checked.

The final diagnosis of the claimant's physician, as inserted in the hospital record by Dr. Shapiro, and also as contained in Dr. Shapiro's notes, was stated as: "Hypothyroidism, adult, due to unknown cause. Psychophysiologic musculosketetal and nervous system reaction." Included in Dr. Shapiro's records is a Department of Radiology report of an examination of the claimant's chest, complete spine, both hands and elbows, and right leg. The conclusion in this report was: "No radiographic evidence of abnormality of cervical, dorsal or lumbar spine, either elbow, either hand or the right leg."

Claimant stated on cross-examination that she had never had pain in the left side of her body before the October 20 occasion when she was forced to stand for three hours while making copies on the Xerox machine. However, in addition to the contradiction of this statement contained in the medical records, an "employee's cause of absence" sheet, which had been signed by the

claimant, explained the reason for her absence from work on July 30, 1971, as "pain in the left side."

In the 1972 case the Industrial Commission found that the claimant had suffered an accidental injury on October 3, 1972. The claimant testified that on that date she went to the room where the Xerox machine was located to copy some material. She testified that while she was there Doris Waller, another stenographer, slammed a steel door "on my side knocking the rib cage one-sided, put my dorsal spine out, pressure on my heart and my lungs, I couldn't breathe. I couldn't talk above a whisper for two weeks."

Doris Waller testified that on October 3, 1972, she went to the Xerox room to make some copies. An attorney was using the machine so she waited for him to finish. The claimant came in while she was there. Miss Waller said she finished her work and left. During this time the claimant said nothing to her and she said nothing to the claimant. The attorney who was in the room when Miss Waller came in also testified. He stated that the claimant came in while they were there and said something like "I'll have to wait." When he finished, he left the Xerox room and walked down the hall. The claimant was standing in the hall at that time. He never saw anyone strike the claimant with a door, and he heard no commotion. He stated the next day that the claimant arrived at work with a police officer and asked him to tell the officer that Miss Waller had hit her with the door. The claimant insisted that he had seen the incident; however, the attorney told her that he had seen nothing of the sort. At this point in the hearing before the arbitrator, the claimant was representing herself, having discharged her attorney before the respondent put on its case. Following this testimony, the claimant, by way of cross-examination, launched into a lengthy speech about the door striking her bones and her bones resting on her heart and lungs. She also again stated that she couldn't speak above a

whisper for two weeks. In response to this, the witness said that when the claimant spoke to him that day (the day after the alleged incident), her voice was perfectly normal, the same voice she had always used in conversation since he had known her.

There is no evidence of any medical attention being sought by the claimant as a result of this incident. There is also no evidence as to the nature of the injuries which the Commission found temporarily and totally disabled her for 64 weeks. All we have in the record are the claimant's rather exaggerated claims. We must conclude that the Industrial Commission's findings are against the manifest weight of the evidence. This conclusion is fortified by other evidence in the record which reveals that the claimant's disabilities stem from causes other than the alleged accidental injuries on the dates specified in the decisions of the Commission in these two cases.

After the incidents involved in the 1971 case, the claimant applied for voluntary admission to Passavant Memorial Hospital and was admitted on January 17, 1972. The admitting diagnosis stated in the hospital records was "acute anxiety reaction." Shortly after her admission claimant became uncooperative and hard to manage. She thought her food was being poisoned and she refused medication, stating that the hospital was running tests on her, "using her as a guinea pig." She thought that the hospital staff was plotting against her. On one occasion she called the police because she perceived a need to "protect myself." She became involved in quarrels and one day reported that she had been attacked by another patient who, she claims, pushed a table against her. During her treatment at Passavant Memorial Hospital, claimant was under the care of Doctors R. Rovner and G. R. LaPlaca. She was in the hospital from January 17, 1972, through February 12, 1972. The discharge summary of her doctors states that her physical examination was

essentially within normal limits. The discharge diagnosis was "paranoid schizophrenia."

On August 25, 1972, after the incidents involved in the claimant's 1971 case, and prior to that of the 1972 case, she was examined by Dr. Richard Heller, whose report, after detailing specific findings of examination, concluded: "This clinical and x-ray examination reveals no evidence of trauma to the head, abdomen, right upper extremity or right lower extremity."

On September 22, 1975, subsequent to both the 1971 case and the 1972 case, she was examined by Dr. Leo Frederick Miller. The doctor's report states that the claimant said she was being investigated by the FBI and by the State's Attorney and was under constant surveillance. She told the doctor she was again assaulted three or four days before the date of this examination and was "thrown down stairs and through a door." The report detailed the findings made during the examination. The doctor concluded that the "neurological examination from an objective standpoint in relation to trauma, was negative of any evidence of pathology." The doctor stated that in his opinion, from an orthopedic standpoint, she could return to her occupational duties, with no deleterious effects.

We noted earlier in this opinion that the "burden of proof is on the claimant, and unless the evidence considered in its entirety shows the injuries resulted from a cause connected with the employment there is no right to recover under the act." (*Revere Paint & Varnish Corp. v. Industrial Com.* (1968), 41 Ill. 2d 59, 63.) In considering this case, we cannot look only to the subjective complaints of the claimant, but we must consider the evidence "in its entirety." In doing so, we conclude that the claimant has not sustained her burden of proving that the injuries of which she complains were accidental injuries that arose out of and in the course of her employment. The findings of the Industrial Commission in both the

488

1971 and 1972 cases were against the manifest weight of the evidence.

The judgment of the circuit court of Cook County is therefore reversed as to the 1971 case (Industrial Commission No. 71WC31536) and affirmed as to the 1972 case (Industrial Commission No. 72WC25895).

*Affirmed in part and reversed in part.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.