(No. 53652)

BEMIS COMPANY, INC., Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Danney F. Hougham, Appellant).

*Opinion filed June 26, 1981.*

F. Don Kelly, of Peoria, for appellant.

Davis & Morgan, of Peoria (Joseph P. Gilfillan, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

Danney Hougham filed a claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1

*et seq.*) for injuries to his left elbow after a fall while employed at Bemis Company, Inc., located in Peoria. After a hearing, an arbitrator awarded the claimant $208.53 per week for 6 1/7 weeks for temporary total incapacity and the same sum per week for 141 weeks for injuries arising out of and during the course of employment which the arbitrator found caused "permanent and complete loss of the use of the left arm to the extent of 60% thereof." The Industrial Commission affirmed the award but the circuit court of Peoria County set aside the decision of the Commission, holding it was contrary to the manifest weight of the evidence. The claimant brought a direct appeal to this court under Rule 302(a)(2) (73 Ill. 2d R. 302(a)(2)).

At the time of his injury, the claimant had been employed at Bemis for six years. On May 23, 1978, he reported for work on a shift which began at 11 p.m., and assumed his duties as a machine tender. His job was to insure that the large paper producing machine, which he tended, operated properly.

The claimant testified that shortly after 5 a.m. he was called down to what is described as the "dry end" of the machine by another employee to examine some work orders. After doing this, and as he was returning to his former position, he claimed to have observed a "dirty" picture of himself posted high on the wall above a desk at the dry end of the paper machine. He said that he climbed on the desk to remove the picture but as he was stepping off the desk onto a stool, the stool gave way, causing him to fall. The claimant noticed swelling in the region of the left elbow and informed his foreman. In describing the incident the claimant made no reference to taking down a vulgar picture of himself but said only that he had fallen from a stool. The foreman directed the union steward to drive Hougham to Proctor Community Hospital in Peoria. There Dr. Rafoal Alameda, the claimant's physician, found that he had suffered a comminuted fracture of the head of

the left radius with impaction, as well as a fracture of the left ulna. Surgery removed the shattered bones of the radius, and the arm was placed in a cast for two weeks. Hougham remained in the hospital for three days.

During his stay at Proctor, the claimant testified that he received a phone call from Robert Madsen, the plant superintendent, who informed him, he said, that Madsen had witnesses who knew the real story as to how the claimant had injured his arm. When Madsen asked whether Hougham had actually fallen while placing a picture of another employee on the wall, the claimant testified that he denied the accusation.

Three days after he was discharged from the hospital, the claimant went to the respondent company to pick up his paycheck. He had a conversation with Madsen, who told him that he would be given a written reprimand for horseplay. Hougham again stated that he denied any involvement in the hanging of a sign or picture of another employee at the time he was injured. The reprimand was issued and placed in the claimant's personnel file. He returned to Bemis on July 6, 1978, and is still employed as a machine tender.

There is no dispute here that the claimant sustained an injury during working hours. The only issue is whether the circuit court was correct in holding that the Commission's finding that his injury arose out of and in the course of his employment was contrary to the manifest weight of the evidence. A finding of the Commission will not be disturbed unless it is contrary to the manifest weight of the evidence. *Lambert v. Industrial Com.* (1980), 79 Ill. 2d 243.

The respondent called a number of witnesses to testify as to the circumstances of Hougham's fall. Fred Ford, the foreman on duty when the claimant fractured his elbow, testified that when he inquired of Hougham how he had injured his arm, the claimant stated that he had tripped

over a chair and had fallen on his arm while trying to break his fall. Ford testified that he did not learn of anyone who had seen the claimant either hang a picture of another employee or fall.

Robert Madsen, the plant superintendent, testified that upon learning of the claimant's injury he made several inquiries and became suspicious of the claimant's version of his fall, particularly when he received from one of the plant foremen a picture of another employee that was seen hanging on the wall near where the claimant had fallen. Madsen next testified that he did not phone the claimant at the hospital but that, instead, the claimant had called him. He testified on cross-examination that he asked Hougham to tell the truth about the circumstances surrounding his injury. He gave the following testimony concerning Hougham's response to his accusation that the claimant was engaged in horseplay when he broke his elbow:

"[The claimant] kind of laughed, and then he said 'Well, I will tell you one thing, I will never do it again. I have learned my lesson.' I told him, I said, 'Danney, now you know that you are going to have to get a write up for this. And I could be more severe on you but I figure you got pretty good punishment with what has happened to you.' "

At no time, stated Madsen, did the claimant protest or present another version of the incident. On direct examination, the claimant had stated that there were two pictures on the wall, one of him and another of John Brooks, a fellow employee, and that he removed only his own picture from the wall.

Madsen said that when he presented the claimant with the written reprimand, Hougham simply placed it in his pocket and walked away without commenting. On cross-examination, Madsen stated that he did not find an employee who had witnessed the accident.

Robert Garber, the union steward, who drove the claimant to the hospital, was the next witness called by the

respondent. Garber stated that, shortly before the incident, the claimant showed him a picture of John Brooks upon which was written: "If we don't get rid of this man, his breath is going to kill us all." When the claimant presented the picture to him, he was laughing, Garber stated. The claimant then took back the picture and headed toward the dry end of the machine. Five minutes later, Garber testified, he was called by his foreman, Fred Ford, to drive Hougham to the hospital. Asked whether he and the claimant had ever discussed his injury, Garber said that the claimant, upon his return to work in July of 1978, stated that he was glad that he was not fired over the incident.

When the arbitrator's award was on review before the Commission, the only new evidence presented was the testimony of Steven Schindler, a fellow employee of the claimant. He worked the same shift and on the same machine as the claimant. On the day Hougham was injured, Schindler was working as a "backtender," most of whose time is spent on the dry end of the machine. From this position, Schindler testified that he had a clear view of the desk and wall area where the claimant had suffered his injury. That was approximately 40 feet away from his position on the machine.

Shortly before the incident, Schindler testified that he walked from the dry end of the paper machine and from the desk area in order to use the washroom in the locker room. He stated that he did not notice any signs on the wall before he left for the washroom. Upon returning to the machine, he saw the claimant getting up from the floor and rubbing his elbow. He then observed a sign, with something about Brooks written on it, posted on the wall above the desk. On cross-examination, Schindler acknowledged that he had not looked at the area above the desk as he walked to the washroom.

From a review of the record, we conclude that the

Commission's decision was contrary to the manifest weight of the evidence. We are, of course, not unmindful that the Commission is to weigh the credibility of witnesses (*Pazara v. Industrial Com.* (1980), 81 Ill. 2d 76; *Sahara Coal Co. v. Industrial Com.* (1977), 66 Ill. 2d 353) and that it has the first responsibility to decide questions of fact, including questions of causation (*Stewart-Warner, Datafax Corp. v. Industrial Com.* (1979), 76 Ill. 2d 464; *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10).

It is, however, fundamental, too, that the burden of establishing the elements of a claim for compensation is upon the claimant. (*Board of Education v. Industrial Com.* (1981), 83 Ill. 2d 475; *Caterpillar Tractor Co. v. Industrial Com.* (1980), 83 Ill. 2d 213; *Corn Products Refining Co. v. Industrial Com.* (1955), 6 Ill. 2d 439.) The claimant must meet this burden by a "preponderance of credible evidence." *Board of Education v. Industrial Com.* (1981), 83 Ill. 2d 475, 479.

A review of the evidence shows an uncorroborated contention by the claimant that he injured himself in a fall while taking down an offensive picture of himself which he said had been posted on a wall, presumably by another employee. The Commission, from its finding, must have deemed that if the claimant had been injured as he described, the injury would have been compensable under the Act. We need not, however, consider whether an injury under those circumstances would have been an injury arising out of and in the course of employment. The conclusion that the claimant was injured as he claimed, and, thus, the finding of the Commission, are contrary to the manifest weight of the evidence.

By the claimant's own admission, he did not tell his foreman that he injured his elbow while removing a picture of himself from a wall. He told the foreman only that he fell from a stool. The offensive picture of the claimant was never found; the only picture found was of the other

employee, John Brooks. Though there is some dispute regarding what was said between the claimant and his superintendent at Proctor Hospital, Robert Madsen's version that the claimant did not deny the accusation that he had been engaged in horseplay seems to be supported by the comment the claimant made to his union steward that he felt he was lucky that he had not been fired over the incident. Too, the steward's testimony that the claimant showed him the picture of Brooks shortly before his fall that shortly thereafter was hanging on the wall near where the claimant fell was not denied. The medical reports in evidence stated that the claimant injured his elbow when he tripped or tried to get off a stool. There is no indication in them that he said he fell while trying to take down a picture. Then there is Steven Schindler's significant testimony that he did not observe any picture on the wall before the claimant had fallen and injured himself. Returning from the washroom he saw the claimant getting up from the floor and noticed a picture or sign referring to Brooks posted on the wall above the desk. This picture had been in the claimant's possession shortly before he was injured.

The finding of the Commission was contrary to the manifest weight of the evidence, and the circuit court correctly set it aside.

For the reasons given the judgment of the circuit court of Peoria County is affirmed.

*Judgment affirmed.*

MR. CHIEF JUSTICE GOLDENHERSH, dissenting:

I dissent. I would reverse the judgment of the circuit court and reinstate the award.

I am unable to distinguish this case from *Converters, Inc. v. Industrial Com.* (1975), 61 Ill. 2d 218, 223, where the court said:

"The resolution of disputed questions of fact

is primarily the function of the Industrial Commission. (*Gubser v. Industrial Com.,* 42 Ill. 2d 559.) The Commission 'must hear and judge the credibility of the various witnesses, sift the evidence, determine where the preponderance of the evidence lies, and then, upon such determination, render its decision.' (*B. F. Gump Co. v. Industrial Com.,* 411 Ill. 196, 198.) On review 'the function of this court is limited to a determination of whether findings of the Industrial Commission are against the manifest weight of the evidence. [Citations.] Too, we hold that if the evidence is conflicting or of a nature which permits the reasonable drawing of differing inferences, we will not set aside the award solely because we might have made a finding on the evidence different from the one made by the Commission or because we might have drawn inferences other than the ones reasonably drawn by the Commission.' *Gubser v. Industrial Com.,* 42 Ill. 2d 559, 562."

The majority makes much of the fact that there was testimony indicating that petitioner may have made out-of-court statements which conflicted with his testimony. Proof of inconsistent statements is not a sufficient basis for holding that the decision is contrary to the manifest weight of the evidence. As this court said in *Guthrie v. Van Hyfte* (1966), 36 Ill. 2d 252, 258, "The fact that a witness, be he a party or otherwise, has made out-of-court statements inconsistent with his sworn testimony does not *per se* destroy the probative value of his testimony, and it ordinarily remains for the trier of fact to determine where the truth lies. (58 *Am. Jur., Witnesses,* [sec.] 863; *Chicago City Railway Co. v. Ryan,* 225 Ill. 287, 289; *Mathews v. Granger,* 196 Ill. 164, 171.)"

The decision of the Industrial Commission on a disputed question of fact should not be set aside because the

circuit court is of the opinion that a different conclusion is more reasonable. It should be set aside only when it is against the manifest weight of the evidence. In this case it is not, and I would reinstate the award.

MR. JUSTICE CLARK joins in this dissent.