CONNIE NELSON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*
(Williams & Meyer, Appellee).
First District (Industrial Commission Division)   No. 1—89—0246WC

Opinion filed January 12, 1990.

Patrick A. Tallon, Ltd., of LaGrange (Patrick A. Tallon and Vitas J. Mockaitis, of counsel), for appellant.

Sweeney & Riman, Ltd., of Chicago (Thomas J. Mallers, of counsel), for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant appeals from an order of the Industrial Commission (Commission) which denied benefits, finding claimant failed to prove a causal connection between her condition of ill-being and the accident she suffered. On appeal, she contends the original award of benefits by the arbitrator should be reinstated because the Commission lost jurisdiction to modify the award because it failed to render its decision within the deadline set by statute. Additionally, claimant contends the Commission's determination she failed to establish a causal connection between her condition of ill-being and the industrial accident was against the manifest weight of the evidence. We affirm.

Claimant was a 39-year-old sales representative for respondent, a commercial color laboratory, which produced artwork for ad agencies and businesses. Her job consisted of making calls on existing and prospective customers in the downtown Chicago area. Because of proximity, she would normally walk to each destination on the 20 such calls made during a normal workday.

On February 21, 1986, while walking west on Wacker Drive at approximately 10 or 11 a.m., claimant testified she "tripped over a place in the pavement or ice." At the time she was carrying a briefcase, a satchel purse, and a 14- by 11-inch mounted art print. Although she stumbled, claimant did not drop anything and did not fall. She was

unaffected by the stumble and went on her way to keep her appointments.

Toward the end of the day at approximately 3 p.m. while waiting for an appointment, she testified, her lower back began to hurt. Because the pain increased she decided not to keep her appointment and took a taxi back to the office.

The next day she went to the Northwestern Hospital emergency room. X rays of her back were taken, and she was prescribed a light painkiller and bed rest. She returned to work the following Tuesday for a half day. Her back pain had fully subsided, and she worked full time until the following Wednesday. On that day, she testified that while walking to an appointment she began experiencing trouble walking and noticed pain in her right leg. Her doctor advised her to quit work for the day. She went to the orthopedic unit at Northwestern hospital the next day, March 6, 1986. After certain tests and a physical exam were administered, she was told to go home. She remained in bed for 11 days.

Claimant returned to work at the end of March but worked only four hours a day. She stated she had no back pain at that time but because of bed rest was weak and tired. She slowly returned to roughly full-time duties by the end of April, when she began experiencing problems with her back again. A doctor told her to cut back her hours.

Claimant continued working until August 6, 1986, when she again experienced pain in her back. An exercise routine and painkillers were prescribed. Although she testified she never worked a full 40-hour week after February 21, 1986, claimant continued to work approximately six hours a day through the winter of 1986 until her employment was terminated on April 15, 1987.

After she lost her job, claimant looked for work but did not accept any job offers. She was bedridden from June 24 to July 8, 1987. She was enrolled in a "back school" at Northwestern and received physical therapy once a week. At the time of arbitration, she had completed the course but had not yet been evaluated by the physical therapist. She testified she continues to suffer from back stiffness and pain which radiates into the buttocks and legs.

Other than a minor injury to her neck and cervical spine following a 1981 automobile accident, claimant adamantly maintained she suffered no low back pain or other back injury prior to February 21, 1986.

On cross-examination, claimant stated she was not sure what caused her to trip on February 21, although it could have been a

break in the sidewalk or ice which had formed in a crack. She also stated she did not remember if she told emergency room personnel she had suffered an accident the previous day.

The emergency room records from Northwestern were shown to claimant. They indicate she told hospital personnel she had sharp back pain for the previous three days and general back pain for the last three months. When asked about this discrepancy, claimant denied a history of prior back pain, stating the records from the emergency room were probably a mistake.

No medical testimony was presented on behalf of claimant except for the records of Dr. Shybut, her treating physician. In July 1987 he diagnosed a herniation of the L5-S1 disc. Also included in those records was the emergency room report in which the history claimant gave revealed she reported sharp back pains for three days prior to her visit to the emergency room and general low back pain for the previous three months. The report also notes the fact claimant stumbled on the previous day. Also included in the record was a form she filled out prior to her examination by Dr. Shybut on March 6, 1986. In response to a question as to whether her condition arose from an accident or injury, claimant circled the answer "No."

Respondent presented a letter from Dr. Clohisy, who examined claimant at respondent's request. Clohisy conducted only a general physical examination of claimant and did not review her CAT scan or X rays. In Clohisy's opinion, there was no connection between claimant's condition of ill-being and her accident. Based on the results of his tests, he observed the severity of her complaints was out of proportion to any objective findings. In contrast, Dr. Shybut was of the opinion there was a relationship between claimant's low back condition and the accident, based solely on the verbal patient history claimant gave him of no prior back pain or injury prior to February 21, 1986.

The arbitrator awarded temporary total disability benefits. On review, the Commission reversed the arbitrator. Although claimant's unrebutted testimony established she suffered an accident arising out of and in the course of her employment on February 21, 1986, the Commission concluded claimant failed to establish a causal connection between her condition and that accident. In reaching its decision, the Commission relied on the emergency room report which showed a prior history of significant back pain and the medical questionnaire claimant answered before her first visit to Dr. Shybut on which she indicated no accident precipitated the condition. On review, the trial court affirmed the Commission.

14

Initially, claimant contends the Commission was without jurisdiction to modify the arbitrator's opinion because it did not render its decision within the applicable time limit.

Claimant filed a petition for emergency hearing under section 19(b—1) of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(b—1)). That section provides in pertinent part:

"The Commission shall adopt rules, regulations and procedures whereby the final decision of the Commission is filed not later than 90 days from the date the petition for review is filed but in no event later than 180 days from the date the petition for an emergency hearing is filed with the Industrial Commission."

Sections 7020.80(4)(C) and (4)(D) of the Illinois Administrative Code provide:

"(C) *** Immediately after the Petition for Review has been filed it will be assigned to a Commissioner who will promptly schedule the case for oral argument before a panel of three Commissioners as provided by Section 19(e) of the Act at a time no less than 25 days nor more than 60 days after the filing of the Petition for Review.

(D) The Commission shall file its decision no more than 90 days after the filing of the Petition for Review, and not later than 180 days from the filing of the Petition under Section 19(b—1), whichever is sooner." 50 Ill. Adm. Code §§7020.804(C), 4(D), at 1436 (Supp. 1986).

The chronology present in this case is as follows:

October 14, 1987: section 19(b—1) petition filed.

November 6 and 9, 1987: arbitration hearing conducted.

January 12, 1988: petition for review filed by respondent.

March 16, 1988: oral argument held.

March 18, 1988: predecision memorandum of Commission filed.

March 24, 1988: request for full written decision filed by claimant.

April 26, 1988: final decision of the Industrial Commission entered.

Under the applicable authority, the Commission's decision was due to be filed no later than April 11, 1988. In its brief before this court, the Commission concedes that the written decision, filed on April 26, 1988, was entered 15 days beyond the time frame established by either the statute or the rule. The Commission notes, however, the predecision was issued within the time limit.

■■ The issue is whether the time frame is mandatory, and therefore "jurisdictional," or directory. If mandatory, then the Commission lost jurisdiction by failing to file the final decision within the applicable limit. If the deadline is directory only, the failure to adhere to the time limit does not deprive the Commission of jurisdiction. No cases have been called to our attention which discuss this issue in the context of the Commission. An examination of the existing precedent, however, leads to the conclusion the time frames are directory only and, therefore, the Commission did not lose jurisdiction to modify the arbitrator's award.

Initially, we note, a substantial argument can be made the Commission did not violate its rule because it issued its predecision within the established time limit. Had claimant not made a request for a full written decision, the predecision would have become final 15 days after filing on April 2, 1987, well within the April 11 deadline.

Claimant nevertheless argues she is entitled under the Act to a full written decision, and because she filed that request some 18 days before the April 11 deadline, she argues the Commission could delay indefinitely the filing of a full written decision and, theoretically, the decision would never become final. While, as an abstract proposition that may be true, the Commission points out that had claimant prevailed before the Commission, she would have been entitled to additional interest from respondent for any period of delay occasioned by the filing of a tardy written decision. Moreover, claimant always has the remedy of *mandamus* to force the Commission to act. *Shawgo v. Illinois Department of Children & Family Services* (1989), 182 Ill. App. 3d 485, 538 N.E.2d 234.

Assuming, without deciding, the decision of the Commission is untimely, the weight of authority supports the Commission's position the time limits are directory. As the court noted in *Shawgo*, there is case law to the effect an administrative agency occasionally loses jurisdiction at a preliminary stage of proceedings because of administrative delay, and this loss of jurisdiction creates a result favorable to a party adverse to the agency. (See *McReynolds v. Civil Service Comm'n* (1974), 18 Ill. App. 3d 1062, 311 N.E.2d 308; *Jackson v. Civil Service Comm'n* (1976), 41 Ill. App. 3d 87, 353 N.E.2d 331.) In those cited cases, the agency did not grant a hearing within the statutorily set period after a request was made by an employee whose employment had been terminated. In those cases, the court observed, the party obtaining the benefit was a party respondent to the proceedings and gained the benefit because the agency no longer had the power to impose a burden such as discharge from civil service

employment upon the employee.

Proceedings before the Commission present an entirely different situation. In the first instance, the Commission is not an adverse party to the litigation. Its role is to adjudicate the rights and liabilities of the real parties to the case, the employer and the employee. Were the respective positions of the parties reversed and it had been an adverse decision of the arbitrator which claimant was appealing, if the Commission failed to abide by the time limit and lost jurisdiction to act, it would have prevented claimant from receiving any relief to which she was arguably entitled had the Commission decided to reverse the arbitrator. Claimant has presented no authority suggesting an arbitrator's award must be reinstated simply because the Commission fails to abide by a deadline.

An analogous situation was presented in *Shawgo*, in which plaintiff appealed to the Department of Children and Family Services to expunge a finding he was a suspect in a child neglect or abuse case. The agency failed to provide him a hearing as required by the act. Noting that one of the policies of the Abused and Neglected Child Reporting Act (Ill. Rev. Stat. 1987, ch. 23, par. 2054) was to protect subjects from the detrimental effect of inaccurate reports, the appellate court concluded the legislature did not intend the deadlines to be mandatory because to do so would deprive wrongly charged individuals of the opportunity to expunge inaccurate records through mere dilatory conduct of the agency. By the same token another policy of the act was to protect children in this State. If mere agency inaction would require automatic expungement of department records, that policy would be frustrated. In *Shawgo*, the court concluded:

> "The only cases called to our attention where a petitioner before an administrative agency has been held to be entitled to affirmative relief by the agency because of its failure to proceed with dispatch involve statutes which expressly provide for the granting of the relief upon the failure of the agency to act. For instance, section 40(a)(2) of the Environmental Protection Act states that a failure of the Environmental Protection Agency to act within a stated time on an application for a permit for a facility subject to pollution control operates as a granting of the permit. [Citations.] We see no indication here of a legislative intent that a 'subject' is to be entitled to expungement upon any failure to act by DCFS." *Shawgo*, 182 Ill. App. 3d at 489, 538 N.E.2d at 236.

The same concerns voiced in *Shawgo* are present here. Neither the statute nor the rule provides for any affirmative relief upon the

failure of the Commission to act within the specified time frames. Second, given the substantial caseload of the Commission, any ruling that the deadlines are mandatory could well deprive both employers and employees of the right to Commission review of decisions of the arbitrators through mere inaction, however legitimate or inadvertent. Finally, there is no evidence present on this record which suggests the Commission's actions were intended to be dilatory or that claimant suffered any injury due to the 15-day delay in filing the Commission's written decision. We conclude the Commission did not lose jurisdiction to act.

Claimant next contends the Commission's determination she failed to establish a causal connection between her condition of ill-being and the accident is against the manifest weight of the evidence. We disagree. Although claimant testified she stumbled on the sidewalk, she suffered no apparent manifestation of injury. Although she reported stumbling to emergency room personnel, she also submitted a history of significant back pain for the three days just prior to her visit to the emergency room and general low back pain for the last three months. This was directly opposed to her testimony at arbitration that she suffered no back pain of any sort prior to the day she stumbled on the sidewalk. This coupled with her negative response to a question asking whether an accident caused her condition, completed five days after the stumble, led the Commission to conclude her condition of ill-being arose from a source independent of the "accident."

It is the responsibility of the Commission to determine whether a causal relationship exists between claimant's back problems and the accident. (*Steiner v. Industrial Comm'n* (1984), 101 Ill. 2d 257, 461 N.E.2d 1363.) In making that determination, it is within the province of the Commission to judge credibility, resolve conflicting medical testimony and draw reasonable inferences from the evidence. (*Lambert v. Industrial Comm'n* (1980), 79 Ill. 2d 243, 402 N.E.2d 617.) That a court might have drawn different inferences from the evidence is not relevant since a reviewing court will not disregard or reject permissible inferences from the evidence. (*Steiner*, 101 Ill. 2d 257, 461 N.E.2d 1363.) Based on the conflicting evidence presented by claimant, the Commission's decision the claimant's accident was not causally related to her back condition is not contrary to the manifest weight. Accordingly, its decision denying temporary total disability benefits and medical bills was proper.

Finally, respondent contends claimant failed to establish an accident occurred. However, respondent did not file a cross-appeal raising as an issue that adverse finding. Accordingly, the issue is not properly

before us. *Ruff v. Industrial Comm'n* (1986), 149 Ill. App. 3d 73, 500 N.E.2d 553.

For the foregoing reasons, the judgment of the Cook County circuit court is affirmed.

Affirmed.

BARRY, P.J., and McNAMARA, WOODWARD, and LEWIS, JJ., concur.