THE CITY OF SPRINGFIELD, Appellant, v. THE INDUSTRIAL COM-
MISSION *et al.* (Ron Adkinson, Appellee).

Fourth District   No. 4—90—0842WC

Opinion filed July 31, 1991.

James K. Zerkle, Corporation Counsel, of Springfield (Peggy J. Witt, Assistant Corporation Counsel, of counsel), for appellant.

J. Jay Robeson, of Springfield, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent, the City of Springfield, appeals from an order of the Industrial Commission (Commission) finding claimant permanently and totally disabled. On appeal, respondent contends that determination is against the manifest weight of the evidence because claimant failed to establish he was unable to secure gainful employment despite the limitations of his injury. Concomitantly, respondent argues that the total disability benefits which claimant was awarded must be adjusted downward to reflect claimant's reduced earning capacity under section 8(d) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(d)).

The facts are substantially uncontroverted. Claimant was employed by the City of Springfield in September 1970 and rose to the rank of master machinist by November 1, 1980. His duties required that he use all manner of hand tools, climb stairs and ladders, and supervise other employees.

On November 1, 1980, claimant injured his left knee while jumping from a truck and subsequently developed a condition diagnosed as Baker's cyst. Although claimant continued to work, the condition did not improve and, after treatment by Dr. Haggerty, Dr. Olysav performed surgery on the left knee in March 1981.

Ten days after surgery, claimant was rehospitalized because of a pulmonary embolism. He was eventually released and returned to work in May 1981 to his former duties. Claimant's left knee condition, however, began to worsen and the cyst returned.

In September 1981, claimant suffered a myocardial infarction and was hospitalized. He came under the care of Dr. Taylor, a cardiologist. In October 1981, claimant developed a ventricular aneurysm

which required removal of approximately 45% of his heart, as well as a blood clot. Claimant was off work for approximately six months and returned to duty in March 1982, again at the position of master mechanic. Claimant's left leg continued to bother him and he returned to Dr. Haggerty, who had originally treated him following his initial injury. In May 1983, Dr. Haggerty performed a second surgery on claimant's left knee to repair the Baker's cyst. Claimant returned to work again in August 1983.

On August 30, 1983, claimant reinjured his knee when he slipped on a muddy floor at work and almost fell. Claimant returned to Dr. Haggerty, who referred him to Dr. Adair, who concluded that further surgery on claimant's left knee would be fruitless.

Claimant returned to work but respondent terminated his employment in January 1985 because of his inability to effectively perform his job duties due to the condition of his left knee. At the time, respondent indicated that there were no suitable jobs available for claimant because of claimant's medical restrictions which forbade excessive use of the knee and such activities as walking and climbing ladders and stairs.

In February 1985, respondent offered claimant three potential jobs at substantially reduced rates of pay from that which he had earned as a master mechanic. The positions offered were those of janitor, utility security officer, and drafting technician. Claimant testified at arbitration that he was aware of and capable of engaging in the tasks of a drafting technician because he had taken a drafting course in high school and had performed drafting work almost 30 years earlier as part of his apprenticeship toward becoming a tool and die maker, a position he held with another employer for almost 20 years.

Claimant, on the advice of Dr. Taylor, his cardiologist, refused the offered positions, however, because of his heart condition. Claimant thereafter applied for and received social security disability benefits as well as an employee disability pension.

The medical evidence suggested that although the initial pulmonary embolism suffered in March 1981 was related to the initial knee surgery, neither the subsequent heart attack nor aneurysm had any relationship to the employment or to claimant's knee condition. In addition, Dr. Haggerty testified that although claimant could not return to his former job as a master machinist because of his knee condition, claimant could perform sedentary work as long as he did not put substantial stress on his knee.

The arbitrator found that claimant was permanently and totally disabled and awarded benefits accordingly under section 8(f) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(f)). In making that award, however, the arbitrator found that claimant was physically capable of performing the job of drafting technician offered by respondent but claimant's unrelated heart condition precluded employment in even that sedentary job. Permanent total disability was, nevertheless, awarded because claimant was disabled from the job in which he was engaged at the time he was originally terminated from employment by respondent because of his knee injury.

Respondent sought review and the Commission affirmed the arbitrator, but on different grounds. The Commission concluded that the subsequent offer of reemployment as a drafting technician was not a *bona fide* offer because, as a condition of reemployment, respondent expressly refused to make up the difference in salary between that which claimant originally earned as a master mechanic and the reduced salary he would have earned in any of the positions offered. In addition, respondent indicated, in its offer, that if problems continued with claimant's knee after he accepted reemployment, he would be charged with sick time should he be unable to work. Because respondent was obligated to pay benefits because of claimant's diminished earning capacity, as well as temporary total disability benefits for any lost time due to his knee condition, the Commission concluded the offer was, in essence, a sham and that claimant was permanently and totally disabled. The circuit court confirmed the Commission.

Respondent initially contends that the finding of permanent total disability is against the manifest weight of the evidence because, at least with respect to the drafting position, claimant acknowledged he was capable of and, in fact, had performed such tasks in the past. Moreover, respondent argues that this position was consistent with the restrictions placed on the use of claimant's left knee. Hence, because claimant was employable, respondent is only liable to pay benefits for the difference in reduced earning capacity between the salary claimant would have earned as a master mechanic and the salary he would have been paid had he accepted the drafting technician position.

■■ ■ A claimant is permanently and totally disabled when he is unable to make some contribution to the work force sufficient to justify the payment of wages. (*Gates Division, Harris-Intertype Corp. v. Industrial Comm'n* (1980), 78 Ill. 2d 264, 399 N.E.2d 1308.) While the burden of proof is upon the claimant to show the

nature and extent of his injuries and the resulting inability to secure gainful employment (*A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 397 N.E.2d 804), a claimant is not required to demonstrate total incapacity or helplessness before a permanent total disability award may be granted under the Act (*Inland Robbins Construction Co. v. Industrial Comm'n* (1980), 78 Ill. 2d 271, 399 N.E.2d 1306). Rather, a person is totally disabled when he is incapable of performing services except those for which there is no reasonably stable market. (*A.M.T.C.*, 77 Ill. 2d at 487, 397 N.E.2d at 806.) Conversely, an employee is not entitled to total and permanent disability compensation if he is qualified for and capable of obtaining gainful employment without serious risk to his health or life. (*E.R. Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353, 376 N.E.2d 206.) In determining a claimant's employment potential, his age, training, education, and experiences should be taken into account. *A.M.T.C.*, 77 Ill. 2d at 489, 397 N.E.2d at 807.

■ We begin by noting that the issue of claimant's heart condition is not material to the issue before us on review. Each of the experts who offered opinions on the subject unequivocally stated that neither claimant's myocardial infarction nor ventricular aneurysm was work related. An employer is not liable for the condition caused by a subsequent disability unless it can be shown that the existing work-related disability was a causative factor in producing the subsequent condition. (*International Harvester Co. v. Industrial Comm'n* (1970), 46 Ill. 2d 238, 263 N.E.2d 49.) Accordingly, it is immaterial whether claimant refused the job offer because of his heart condition.

■ The question before us is whether claimant was capable of performing that employment without serious risk to his health because of the work-related injury. The evidence clearly showed claimant was qualified to perform the tasks of a drafting technician given the limitations placed on the use of his knee. His treating physician, Dr. Haggerty, testified claimant was capable of performing sedentary work. There is no suggestion that the duties of a drafting technician are not essentially sedentary in nature. Moreover, claimant testified he was capable of performing these duties as he had previously taken a high school course in drafting and had worked as a drafter prior to becoming a tool and die maker. Since this was the type of employment that could be performed by a person in claimant's circumstances, given the limitations in using his left knee, claimant did not demonstrate he was permanently and totally disabled within the meaning of the Act.

Nevertheless, the Commission found claimant's offer of employment was not *bona fide* because of the conditions placed upon it. At the time the offer was made, and in response to questions specifically raised by claimant, respondent indicated it would not make up the difference between the salary claimant earned from his previous position as master mechanic and the substantially reduced sum he would have earned as a drafting technician. Respondent specifically indicated the salary claimant would receive for the position he chose from those offered would be the entire sum he would receive. Respondent further indicated that should claimant be unable to work because of recurring knee problems, he would be charged with sick time rather than be accorded additional temporary disability.

While we do not condone the respondent's conduct in conditioning reemployment upon such conditions, there is no testimony suggesting claimant would have refused the position for those reasons alone. In addition, we are skeptical that had claimant been able to accept the position absent his heart condition, respondent could have enforced such conditions.

At the time the offer was made, petitions for adjustment of claim had been filed before the Commission for the two knee injuries claimant suffered. To the extent claimant was clearly entitled to benefits because of his obviously permanent knee disability, respondent was in no position to legally compel claimant to forego these benefits in view of the pending Commission proceedings. Since respondent was statutorily obligated under section 8(d) of the Act to pay benefits based on claimant's diminished earning capacity, any attempt to evade payment of these benefits as a condition of reemployment would have been futile.

■ Despite the chicanery attempted by respondent, we conclude the Commission's determination the offer was not *bona fide* is against the manifest weight of the evidence because the conditions placed upon that offer were legally unenforceable.

While we appreciate the Commission's displeasure with respondent's practices, that does not detract from the fact that claimant was capable of performing the employment within the medical limitations applicable to his injured knee. Moreover, no authority is offered for the proposition that the mere act of attaching spurious conditions which respondent could not compel claimant to accept to an otherwise legitimate offer of employment renders the offer non-*bona fide* within the meaning of the Act. Accordingly, we conclude the determination that claimant was permanently totally disabled is against the manifest weight of the evidence.

For the foregoing reasons, the judgments of the circuit court and the Commission are reversed, and the cause is remanded to the Commission for the calculation of benefits for claimant's reduced earning capacity in conformity with section 8(d) of the Act.

Reversed and remanded with directions.

McNAMARA, WOODWARD, STOUDER, and LEWIS, JJ., concur.