BALDWIN ASSOCIATES, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Paul E. Breymeier, Appellee.)

Fourth District (Industrial Commission Division)   No. 4—91—0280WC

Opinion filed July 24, 1992.—Rehearing denied September 24, 1992.

L. Robert Mueller, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellant.

Michael K. Brandow, of Smith, Waters, Kuehn & Hughes, Ltd., of Peoria, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Appellant Baldwin Associates (employer) appeals the judgment of the circuit court which confirmed a decision of the Industrial Commission (Commission) that claimant-appellee Paul Breymeier (claimant) was permanently and totally disabled for life under section 8(f) of the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(f)). The Commission had increased the award of the arbitrator, which awarded claimant 40 weeks of total disability, in addition to 22$\frac{2}{7}$ weeks of temporary total disability under section 8(b) of the Act. (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(b).) We affirm.

The pertinent facts are as follows. Claimant was employed by Baldwin as a plumber-pipe fitter. At the time of the hearing on August 27, 1987, claimant was 64 years of age. He testified that he first noticed problems with his knee on December 11, 1984, and went to his physician, Dr. Werking, the next day. Claimant was referred to Dr. Watson, an orthopedic surgeon, who performed surgery. Claimant has not worked as a plumber-pipe fitter since December 11, 1984.

Claimant further testified that he was unaware of any light-duty work which could be procured from the union hall. His knee still swells, and the knee often bothers him when he walks up or down steps. Claimant has not engaged in heavy lifting, and the most he can lift is around 25 pounds. He denied any previous injury to his knee and has not reinjured his knee subsequent to December of 1984.

In May of 1986, claimant filled out a union form pertaining to work availability at the time. He indicated on this form that he was not seeking employment at this time and was not seeking retraining in a different occupation. In response to a question asking if there was any reason, other than medical, why he was not working, claimant indicated that he was "retired." Claimant testified that he was not seeking employment and retraining because of his age, which was 64 years.

Other evidence in this case consists of medical reports, and the depositions of Drs. Werking and Watson, concerning the surgery performed on claimant on April 17, 1985. Dr. Watson testified that at the time of surgery, he diagnosed moderate to severe arthritis involving the medial femoral condyle, the lateral femoral condyle, and under the surface of the patella. Dr. Watson shaved down the arthritic surfaces. Following the surgery, Watson saw claimant on April 23, 1985, and at this time claimant was doing well. Claimant was discharged from Watson's care at this time, and Watson has not seen claimant since this time. Watson's diagnosis in April of 1985 was osteoarthritis of the knee.

Dr. Watson's prognosis for the knee in April of 1985 was moderately poor. Watson testified that claimant could probably not return to his occupation. It was very probable that claimant would require future medical care for the knee, possibly further medication, arthroscopic procedures and joint replacement. Watson felt that claimant should avoid all physical activities which caused him discomfort. Dr. Watson also testified that the arthritis he saw in March of 1985 was the same that was present before claimant's injury.

In the surgery Dr. Watson performed on claimant, he found no evidence of tears of ligaments or menisci. Watson felt that claimant

would be maximally improved from the surgery about a month after surgery, and he did not instruct claimant to seek any further medical care. Watson described the arthroscopic procedure he performed as relatively innocuous.

Dr. Werking first saw claimant on December 13, 1984, and continued to treat claimant to the end of 1984. Werking provided claimant with a work release (with restrictions) on January 4, 1985. These restrictions included no heavy lifting or carrying over 25 pounds, no repetitive bending or walking up stairs or standing. Werking recommended rest periods for claimant as well. Dr. Werking again saw claimant on April 25, 1985, after Dr. Watson's surgery. On June 24, 1985, Dr. Werking saw claimant again, and at this time changed claimant's work restrictions to include lifting weights of up to 50 pounds. The other restrictions remained, with the additional restriction that claimant was to avoid uneven grades.

Claimant filed an application for adjustment of claim on July 8, 1985. The hearing before the arbitrator was held on August 27, 1987. On September 30, 1987, the arbitrator rendered her decision awarding claimant 22²/₇ weeks of temporary total disability at a rate of $474.71. The arbitrator further found that claimant was entitled to 40 weeks at $293.61 pursuant to section 8(e) of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.8(e)), and that he had sustained 20% loss of use of his right leg. Claimant appealed the arbitrator's decision, and the hearing before the Commission was held on June 30, 1988. On July 25, 1990, the Commission issued its decision, which increased claimant's benefits to $474.71 per week for life, based on a finding of permanent total disability under section 8(f) of the Act.

The employer then appealed the Commission's decision to the circuit court, which on March 14, 1991, rendered a decision confirming the Commission's decision. The employer filed its notice of appeal on April 12, 1991.

The issue presented for appeal is whether the decision of the Commission finding claimant permanently and totally disabled is against the manifest weight of the evidence.

■■ ■ In the recent case of *Marathon Oil Co. v. Industrial Comm'n* (1990), 203 Ill. App. 3d 809, 815-16, 561 N.E.2d 141, the court observed:

"An employee is totally and permanently disabled under workers' compensation law where he is unable to make some contribution to industry sufficient to justify payment of wages to him. [Citation.] He must show that he is, for practical purposes, unemployable. [Citation.] A person need not be reduced

to a state of total physical helplessness, but is totally disabled when he cannot perform services except those that are so limited in quantity, dependability or quality that there is no reasonably stable market for them. [Citation.]

The employee bears the burden of proving each element of his case, including the extent and permanency of the injury. [Citation.] It is within the province of the Commission to determine the factual issues, to decide the weight to be given to the evidence and reasonable inferences to be drawn therefrom, and to assess the credibility of witnesses. The Commission's determination of these issues will not be set aside unless it is against the manifest weight of the evidence."

In arguing that the determination of the Commission in the case *sub judice* was against the manifest weight of the evidence, the employer relies heavily on the cases of *A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 397 N.E.2d 804, and *Intercraft Industries Corp. v. Industrial Comm'n* (1983), 95 Ill. 2d 297, 447 N.E.2d 807. Specifically, the employer notes that the *A.M.T.C.* court observed that the mere fact a worker cannot perform very strenuous physical labor does not, standing alone, entitle him to an award as permanently and totally disabled. (*A.M.T.C.*, 77 Ill. 2d at 489.) The employer further notes that in *Intercraft*, the court noted, without specifically relying on it in reaching its holding, that the employee had accepted retirement benefits. In reaching its holding that the employee did not meet his burden of proving total disability, the court did rely on the fact that "all the medical opinions adduced *** were in agreement at least to the extent that petitioner was capable of sedentary work. Petitioner did not introduce evidence concerning his education or skills, and did not suggest that he fell into an 'odd lot' category." *Intercraft*, 95 Ill. 2d at 300.

Claimant counters by noting that there is no evidence in this case that he could either perform sedentary work or be employed in another capacity. According to claimant, who cites *Esposito v. Industrial Comm'n* (1989), 186 Ill. App. 3d 728, 542 N.E.2d 843, once the employee has met his burden of proving the extent and permanence of his injury, the employer must then show that work is regularly and continuously available to the employee in the competitive job market. Claimant contends that the Commission's determination was the resolution of a factual question which should not be disturbed as it was not against the manifest weight of the evidence.

■ The appropriate formulation of the burden of proof with respect to availability of employment is found in the case of *Valley*

*Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 546-47, 419 N.E.2d 1159. There the court stated:

"Under *A.M.T.C.*, if the claimant's disability is limited in nature so that he is not obviously unemployable, *or if there is no medical evidence to support a claim of total disability*, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the 'odd-lot' category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market [citation]), then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant [citation]." (Emphasis in original.)

■ Without addressing the "odd-lot" doctrine, we hold that claimant successfully met his burden in proving total disability. Claimant testified that he has problems mounting and dismounting steps, and his knee is often pained. He further testified that he was uncomfortable sitting in a confined area. The heaviest amount claimant can lift is about 25 pounds. Dr. Watson testified that claimant could probably not return to his job, and that future medical care, possibly joint replacement surgery, would be needed. All physical activities which caused claimant pain should, according to Watson, be avoided. Claimant's condition was permanent and would not improve. As a result of his injuries, claimant, who still is restricted as to how much lifting he can do and even standing for long periods, must rest five minutes every hour.

This is not a case, such as *Intercraft*, where medical experts agreed that claimant was able to perform a sedentary occupation. In fact, claimant testified that he had problems sitting for extended periods of time. Nor is this a case like *A.M.T.C.*, where the claimant, a 45-year-old mover, testified that his leg was sore and stiff and that he could not resume his prior job because it involved carrying heavy objects up and down stairs. The court pointed out that claimant never stated that he was permanently and totally disabled, and the only medical testimony was that he was an "industrial cripple." Further, in *A.M.T.C.*, the record was silent as to the claimant's training or capabilities and, as a result, the court was unable to determine whether claimant could perform work other than that of a mover.

The evidence in the case *sub judice* establishes that claimant was 64 years of age at the time of the hearing and that claimant had been

engaged as a pipe fitter (with the exception of one year when he sold used cars) continuously since 1941, when he would have been about 18 years of age. As the court explained in *Ceco Corp. v. Industrial Comm'n* (1983), 95 Ill. 2d 278, 287, 447 N.E.2d 842: "In determining a claimant's employment potential, his age, training, education, and experiences should be taken into account." Claimant's advanced age and work experience support the Commission's determination that he would be incapable of performing services for which there is a reasonably stable market. In sum, we hold that the Commission's finding of total and permanent disability is not against the manifest weight of the evidence.

Affirmed.

WOODWARD and H. LEWIS, JJ., concur.

JUSTICE McCULLOUGH, dissenting:
I disagree with the majority in finding that the claimant successfully met his burden in proving total disability.

The majority refers to the testimony of Drs. Watson and Werking. Dr. Watson indicated that claimant would be maximally improved from the surgery about a month after surgery and did not instruct the claimant to seek any further medical care. Following the surgery when Dr. Watson saw claimant on April 23, 1985, he indicated that the claimant was doing well, discharged the claimant from his care and has not seen the claimant since April 23, 1985. Dr. Watson did indicate that the claimant could probably not return to his occupation but also testified that the arthritis he saw in March 1985 was the same that was present before the claimant's injury.

Dr. Werking provided the claimant with a work release on January 4, 1985, the restrictions to include no heavy lifting or carrying over 25 pounds, no repetitive bending, or walking upstairs or standing. The doctor saw claimant again on April 25, 1985, after the surgery and again on June 24, 1985, and at that time changed the claimant's working restrictions to include lifting weights of up to 50 pounds.

As the majority points out, the claimant admits that he was not looking for work, that he was retired, and did not seek employment or retraining because of his age, which was 64 years. The majority refers to *Marathon Oil Co., A.M.T.C., Intercraft,* and *Valley Mould.* I agree all of these cases are important in determining the burden of proof with respect to the claimant's disability.

Because the majority finds that the claimant met his burden proving total disability, this dissent concerns only that proposition. It cannot be said that a claimant or any employee is permanently disabled simply because he has problems mounting and dismounting steps, that his knees were often pained and that he was uncomfortable sitting in a confined area. Dr. Watson did not testify that the claimant could not work, but simply testified that he could probably not return to his job and that future medical care would be needed. This clearly does not show that the claimant was permanently and totally disabled. In addition, Dr. Werking did not testify claimant was permanently and totally disabled.

The Act was not designed to be a retirement system for persons in the claimant's position. With respect to this claim, the arbitrator awarded the claimant 20% loss of use of his right leg. Based upon the evidence presented before the arbitrator and the Commission, this finding is within the evidence presented. The decision of the Commission finding the claimant to be permanently and totally disabled is clearly against the manifest weight of the evidence. None of the doctors testifying stated that the claimant was permanently disabled. At the most, it could be said that the doctors indicated that he should not return to work as a pipefitter. This in itself does not have anything to do with the determination of whether the claimant is permanently disabled.

*Esposito* is not authority for making a determination that the claimant is permanently disabled. *Esposito* simply stated that the claimant had met his burden of demonstrating that, although he was not altogether incapacitated for work, he was so handicapped as to be unemployable in any known branch of the labor market. This is not the case here.

The judgment of the circuit court confirming the decision of the Commission should be reversed and the decision of the arbitrator reinstated.

STOUDER, J., joins in this dissent.