(No. 51649.—

A.M.T.C. OF ILLINOIS, INC., AERO MAYFLOWER TRANSIT COMPANY, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Charles E. Lunon, Appellee).

*Opinion filed November 21, 1979.*

Peregrine, Stime & Newman, Ltd., of Wheaton (Roy I. Peregrine, of counsel), for appellant.

Gallagher & Petrak, of Chicago (Richard F. Gallagher and Russell H. Petrak, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The employer, A.M.T.C. of Illinois, Inc., Aero Mayflower Transit Company, Inc. (hereafter referred to as A.M.T.C.), appeals from the order of the circuit court of Cook County confirming the Industrial Commission's

award which affirmed the arbitrator's finding that the employee, Charles E. Lunon, is permanently and totally disabled. There is no dispute that the injury arose out of and in the course of the employee's employment; the only issue is whether the employee has sustained his burden of proving permanent and total disability.

On February 28, 1975, Lunon, age 45, while moving a dresser down a flight of stairs, experienced a pain in his groin, which caused him to lose his balance and fall. He injured his left knee and ankle. He was taken to the Ravenswood Hospital Medical Center in Chicago. His left knee and ankle were X-rayed and bandaged and he was told to see his own doctor. A.M.T.C. later sent Lunon to O'Hare Industrial Clinic, where more X rays were taken, new bandages applied and he was checked for a hernia and fitted with a truss.

From February 28, 1975, through February 18, 1976, Lunon was under the care of Dr. Otto Bouc of O'Hare Industrial Clinic, receiving physical therapy treatments for the injuries to his left knee and ankle. He returned to work for a few weeks in July 1975, then took two weeks' vacation. He returned to therapy until Dr. Bouc directed him to return to work on November 6, 1975. Upon returning to work, A.M.T.C. sent him to the Franklin Park Industrial Clinic to obtain a second medical opinion. X rays were taken and A.M.T.C. was advised that Lunon not be permitted to return to work since he was a poor risk to do heavy manual labor such as lifting or driving because it might aggravate his knee problem. Lunon continued physical therapy. On December 19, 1975, at the request of A.M.T.C., Lunon underwent an orthopedic examination by Dr. Sid Shafer, who concluded that Lunon could return to work. In January 1976, an arthrogram was performed upon Lunon's knee by Dr. Malcolm A. Tengblad at the Chicago Osteopathic Hospital. The tests showed a small posterior horn-tear of the medial meniscus of petitioner's left knee and a small popliteal cyst. An

operation was prescribed to alleviate the problem but never took place.

On March 4, 1976, the parties appeared before an arbitrator, but the hearing was continued until more medical evidence could be obtained. The employee saw several doctors on his own and one at the request of A.M.T.C. Arbitration resumed on May 5, 1976. The medical testimony presented before the arbitrator was extensive and conflicting. However, it is clear from reading the medical testimony most favorable to Lunon that he suffered a possible torn medial meniscus, a contusion, strain, swelling, impaired mobility, weakness, stiffness, tendinitis and synovitis of the left knee and ankle and a possible cyst on the left knee. Lunon testified during arbitration that his left leg bothered him and there was a burning in the muscles of his left knee and ankle and a tightening in the calf of his left leg. He also testified that he had not sought other employment since the injury in question. On May 18, 1976, there was an arbitration award under section 19(b) of the Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.19(b)) for temporary disability, the condition not having reached permanent status. The arbitrator heard additional evidence on June 19, 1977. Lunon testified that his left knee bothered him in damp weather, was stiff in the mornings, clicked when going up and down stairs, and had a burning sensation at night and a throbbing pain like a heartbeat. He stated that he had not sought employment and that he could not work because he "couldn't go up and down stairs carrying furniture and heavy objects like cartons." Again, there was conflicting medical testimony concerning the extent of the injury and the desirability of surgery. The employee's doctor's reports suggested that he have surgery to alleviate the knee ailment, while A.M.T.C.'s doctors felt surgery was not necessary.

A report by one of Lunon's doctors, Dr. Raymond Schlueter, and a medical report by the Chicago Osteo-

pathic Hospital, contained Lunon's medical history. The Chicago Osteopathic Hospital record revealed that Lunon suffers from numerous physical maladies besides the left leg problem, which has a long history. He suffered left knee pains caused by an injury dating back to 1947 or 1948 while employed at Western Electric. The knee pain occurred again when he reinjured himself on the job at the Stone Container Corp. in 1952. The symptoms reoccurred in 1972 after another job-related accident. Lunon reinjured his left leg in May 1974 and received $3,000 for 10% loss of use of the left leg in a settlement contract approved by the Industrial Commission. In the summary of his report, Dr. Schlueter called Lunon an "industrial cripple." After all the evidence, the arbitrator found that Lunon was completely disabled due to the industrial accident and thus wholly and permanently incapable of work. The Industrial Commission and the circuit court upheld the award. The employer contends that the evidence in this case fails to meet the required factual prerequisite for a permanent and total disability award.

We have held on numerous occasions that "an employee is totally and permanently disabled for the purpose of workmen's compensation benefits when he is unable to make some contribution to industry sufficient to justify payment to him of wages." (*C. R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273, 278; *Consolidated Freightways, Inc. v. Industrial Com.* (1976), 64 Ill. 2d 312, 320.) However, this does not require that the injured party be reduced to a state of total physical or mental incapacity or helplessness. (*E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353.) A person is totally disabled when he cannot perform services except those that are so limited in quantity, dependability or quality that there is no reasonably stable market for them. (*Sterling Steel Casting Co. v. Industrial Com.* (1979), 74 Ill. 2d 273, 278; *Interlake Steel Corp. v. Industrial Com.* (1975), 60 Ill. 2d

255; *South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485.) Therefore, if an employee can take up some form of employment without seriously endangering his health or life he is not entitled to total and permanent disability compensation. *E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353; *Jefferson Electric Co. v. Industrial Com.* (1976), 64 Ill. 2d 85.

A claimant has the burden of proving all the elements of his case, including the extent and permanency of the injury, in order to recover benefits under the Workmen's Compensation Act. This burden of proof must be met by a preponderance or greater weight of the evidence, and an award that is against the manifest weight of the evidence must be set aside. Liability cannot be premised upon imagination, speculation or conjecture, but must arise from facts established by a preponderance of the evidence. *Arbuckle v. Industrial Com.* (1965), 32 Ill. 2d 581.

In the present case, the burden is upon Lunon to establish or at least present facts from which it can be inferred that he is permanently and totally disabled. This the claimant has failed to do. None of the medical reports admitted into evidence state that he is permanently and totally disabled, nor does he testify that he is permanently and totally disabled. The claimant would have us believe that the phrase in Dr. Schlueter's report labeling the claimant an "industrial cripple" entitles him to an award for permanent and total disability; however, the meaning of this phrase is unclear. The phrase comes at the end of the claimant's medical history, which contains a plethora of industrial injuries, including the injury to the claimant's left leg in 1974, which resulted in an award for 10% permanent disability to the leg. Anyone who is permanently disabled to any degree due to an industrial injury could be referred to as an "industrial cripple." This phrase is not a legal term of art and does not signify that a person is permanently and totally disabled. Also, Lunon did not

testify that he is permanently and totally disabled. He did testify before the arbitrator about the soreness and stiffness in his leg and that he cannot resume his prior job as a mover because it entails carrying heavy objects up and down stairs. However, the inability to do very strenuous manual labor does not necessarily make one permanently and totally disabled. Disability is not tested by any particular occupation, for even a skilled craftsman who can no longer perform his craft due to an industrial injury may not be deemed totally disabled if there is regular unskilled work that is continuously available to him. (2 A. Larson, Workmen's Compensation sec. 57.53, at 10–129 to 10–130 (1974).) Therefore, just because the claimant cannot perform very strenuous physical labor does not, by itself, entitle him to an award as permanently and totally disabled.

In arriving at a determination of an award for permanent and total disability, the Commission should consider the extent of the claimant's injury, the nature of his employment, his age, experience, training and capabilities. (*E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353; *Consolidated Freightways, Inc. v. Industrial Com.* (1976), 64 Ill. 2d 312; *Springfield Park District v. Industrial Com.* (1971), 49 Ill. 2d 67.) In this case Lunon's age, 45, is part of the record; however, there is little information concerning his training and capabilities. Lunon testified that he had worked as a full-time mover for A.M.T.C. for 7 years prior to this injury and as a part-time mover for 6 years prior to becoming a full-time employee. He also stated that he performed other work while he was a part-time mover, but this work was not specified. On a hospital report that is part of the record it is disclosed that Lunon only finished the 8th grade. We also learn from this report that he had been employed by Western Electric and the Stone Container Corp.; however, neither the type of work he performed nor the training he

received is reflected in the record. Thus, we are unable to ascertain from the record what type of work the claimant is capable of performing besides that of a mover, nor can we ascertain his training or capabilities.

If a claimant's physical disability is limited in nature so that he is not obviously unemployable, then it is not unreasonable that the burden be upon him to establish the unavailability of work to a person in his circumstances. This burden can be met by showing that reasonable efforts were made to secure suitable employment—the kind of employment that can be performed by a person in his circumstances. (*E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353; 2 A. Larson, Workmen's Compensation sec. 57.61, at 10—138 (1974).) In the present case, Lunon did not attempt to seek other employment, nor did he testify that he cannot perform work other than heavy moving due to physical inability or lack of training and skills.

For the reasons stated herein we find that the claimant has not met his burden of proof. The judgment of the circuit court of Cook County is therefore reversed, and the cause is remanded to the Industrial Commission for further hearing.

*Reversed and remanded.*