ROWE CONSTRUCTION COMPANY, Appellee, v. THE INDUSTRIAL COMMISSION et al. (Catarino Villanueva, Appellant).

Fourth District (Industrial Commission Division)  No. 4—84—0102WC

Opinion filed October 31, 1984.

Law Office of Mike McElvain, and Robert E. Williams, Ltd., both of Bloomington (Mike McElvain, of counsel), for appellant.

Alan L. Sternberg, of Pratt, Sternberg & Finegan, P.C., of Bloomington, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The claimant, Catarino Villanueva, filed a claim under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*). He has appealed from the judgment of the circuit court of McLean County, which found the decision of the Industrial Commission to be against the manifest weight of the evidence and reinstated

the arbitrator's award. We reverse.

On October 8, 1979, the claimant was a 12-year general laborer in the employ of the respondent, Rowe Construction Company. He was 48 years of age, had a seventh-grade education and no specialized training. His prior work history consisted of construction, farm, and general labor work.

While at work, the claimant was holding one end of a heavy pipe. The pipe jerked when the equipment holding the other end malfunctioned. The claimant both heard a pop in his back and felt pain there. The employer arranged an appointment with Dr. Cunningham, who prescribed heat treatments. Four days later the claimant engaged the services of a chiropractor, which continued for a period of some six months. He was next seen by Dr. Gordon Schultz, and it appears that he was referred to the Carle Clinic in Urbana. On July 2, 1980, the claimant underwent a laminectomy and fusion. A neurologist, Dr. Kaufman, of the Carle Clinic performed the laminectomy, and the fusion was performed simultaneously by orthopedic surgeon Alain F. Menguy. On November 2, 1981, Dr. Menguy released the claimant to return to work.

At the May 26, 1981, hearing before the arbitrator, the claimant testified that soon after he was released by Dr. Menguy, he informed the respondent that he was available for work. He also went to his union local to seek a job. The respondent presented in evidence an April 1981 letter from Dr. Menguy which offered the opinion that the claimant had soreness of a kind tolerated by most patients and normal or near normal flexibility. Dr. Menguy opined that the claimant was employable with a 60-pound lifting limitation and that the claimant would have a permanent residual disability.

On July 30, 1981, the arbitrator entered an award of 67½ weeks of temporary total disability and permanent total disability of 35% of the whole man under section 8(d)(2) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(d)). The arbitrator determined the claimant's average weekly wage under section 10(d) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.10(d)). The claimant sought review by the Industrial Commission.

Upon review on April 28, 1982, the Commission received the claimant's additional testimony that he had pain in his legs and was unable to stand longer than approximately one hour at a time. The claimant also testified that he had sought work with the respondent and through the unemployment office and had not been employed since his injuries.

In an evidence deposition submitted to the Commission, Dr. Men-

guy testified that he had examined the claimant several times since the arbitration hearing. The latest examination was in January of 1982. At that time, the claimant complained of persistent back pain and was measurably less flexible than at his April 1981 examination. Specifically, in his January 1982 examination Dr. Menguy objectively found that the claimant had markedly more limitation in his back. His extension was limited to 10 degrees. His level bend was also limited to 10 degrees on either side. When the claimant bent forward with his knees straight he experienced pain in his back when his hands only reached the upper leg level. In April 1981, on the other hand, Dr. Menguy found that the claimant had normal extension to 30 degrees and normal lateral bending. Based upon the claimant's current complaints and the January examination, the doctor offered his opinion that the claimant was unable to work.

The respondent presented a medical report from Dr. O. H. Hoffman, who examined the claimant in March of 1982. Dr. Hoffman found that the claimant had some impairment of motion but normal mobility in some aspects. He also found no measurable neurological deficit in either lower extremity. Dr. Hoffman opined that the claimant was then able to be gainfully employed but that he should not do heavy lifting or climbing.

The respondent also presented the evidence deposition of Robert Duncanson, respondent's general superintendent. Duncanson equivocated. He testified that he received the claimant's work release and both that he had no knowledge of the lifting limitation and that he did not recall any such restriction. Duncanson further testified that there was available work for which the claimant could qualify, given the lifting limitation. He also testified that work was less plentiful in 1981 than in 1980. According to Duncanson, there was an unwritten agreement between the individual local contractors and the union that gave recall rights to employees who had worked for a company the previous year. He said respondent's foremen had authority to decide which employees to call to work. He testified that he did not know whether the claimant was called back, and that to his knowledge the claimant was not called back. The record indicates that the claimant was never called back to work with the respondent after his injury.

The claimant testified before the Commission that Mr. Duncanson had told him that because of his lifting limitation it was unlikely he would be called back to work. Claimant also testified that he had looked for work at the unemployment office. The record included the claimant's testimony before the arbitrator that he also had sought employment at his union local.

Proofs were closed on May 26, 1982. On June 30, 1982, the Commission denied the respondent's motion to reopen. The respondent sought to admit a newspaper photograph published on May 27, 1982, in which the claimant was shown dancing.

In January of 1983, the Commission found that the claimant was totally and permanently disabled and determined the average weekly wage under section 10(e) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.10(e)).

The respondent sought review of the Commission's decision in the circuit court. On June 23, 1983, the circuit court held that the decision of the Commission was against the manifest weight of the evidence. The court set aside the decision of the Commission and reinstated the award of the arbitrator. The claimant now appeals from the order of the circuit court.

■ The first issue on appeal is whether the Industrial Commission's finding that the claimant is permanently and totally disabled is against the manifest weight of the evidence. The claimant contends that the findings of the Commission were not against the manifest weight of the evidence and that the circuit court improperly substituted its own interpretation of the evidence.

The Illinois Supreme Court has held that "a person is totally disabled when he cannot perform any services except those for which no reasonably stable labor market exists." (*E. R. Moore Co. v. Industrial Com.* (1978), 71 Ill. 2d 353, 361-62, 376 N.E.2d 206, 210.) The *Moore* court further held that, in determining whether an employee may perform any useful services, his age, training, education and experience must be taken into account. Under *Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, 419 N.E.2d 1159, unless he is obviously unemployable or unless he presents medical evidence to support a claim of total disability, a claimant has the burden to prove that no employment is available for a person in his circumstances. However, once the claimant establishes that he falls into the "odd-lot" category of persons who are not altogether incapacitated but are so handicapped that they will not be employed regularly in any well-known branch of the labor market, the burden shifts to the employer "to show that some kind of suitable work is regularly and continuously available to the claimant." 84 Ill. 2d 538, 547, 419 N.E.2d 1159, 1163.

The claimant argues that he presented a *prima facie* case of total disability so that the burden shifted to the respondent to show that some kind of work is regularly and continuously available to the claimant. The claimant's argument is made in the alternative. He argues first that he offered medical evidence to support a claim of total

disability, thus shifting the burden. (*Ceco Corp. v. Industrial Com.* (1983), 95 Ill. 2d 278, 447 N.E.2d 842.) He argues secondly that the burden shifted when he presented evidence to establish that he fell into the "odd-lot" category of persons described in *Valley Mould*. We agree that the burden shifted in this case and that the respondent did not meet its burden.

The claimant correctly argues that Dr. Menguy's January 1982 evaluation is medical evidence to support the claim of total disability. Despite the respondent's assertion to the contrary, Dr. Menguy's January 1982 examination of the claimant did produce objective medical evidence that the claimant's condition had deteriorated from the condition which Dr. Menguy observed before the arbitration hearing. Specifically, Dr. Menguy reported the claimant's marked loss of extension, level bending, and ability to bend forward.

The Commission was presented with conflicting evidence both of the claimant's medical condition and on the availability of work for which the claimant is qualified. The Industrial Commission believed Dr. Menguy's testimony concerning the extent of the claimant's disability and found unpersuasive Duncanson's testimony that there is work which the claimant can do. It is for the Commission to decide questions of fact, including the credibility of witnesses, and to choose between conflicting medical evidence. (*Walden v. Industrial Com.* (1983), 93 Ill. 2d 527, 445 N.E.2d 326.) The decision of the Industrial Commission was not against the manifest weight of the evidence. The circuit court therefore erred in reversing the Commission's decision. *Stewart Warner, Datafax Corp. v. Industrial Com.* (1979), 76 Ill. 2d 464, 394 N.E.2d 397.

■ The second issue on appeal is whether the court improperly reinstated the arbitrator's finding on average weekly wage. The claimant argues that the trial court improperly reinstated the arbitrator's finding without determining that the Commission's finding was contrary to the manifest weight of the evidence.

The arbitrator determined the claimant's annual wage under section 10(d) of the Act, which applies to "employees in employments in which it is the custom to operate throughout the working days of the year." (Ill. Rev. Stat. 1979, ch. 48, par. 138.10(d).) The Commission found instead that the claimant's work was seasonal and thus determined the claimant's annual wage under section 10(e), which applies to employments "in which it is the custom to operate for a part of the whole number of working days in each year." Ill. Rev. Stat. 1979, ch. 48, par. 138.10(e).

The Commission's determination that the claimant's employment

was seasonal was not against the manifest weight of the evidence. The respondent's general superintendent, Robert Duncanson, testified that "spring is a very slow start" for the respondent's construction work. Additionally, the claimant testified before the arbitrator that during his years of employment with the respondent he worked nine to 10 months of the year. The court erred in reversing the Commission's computation of the claimant's average weekly wage.

Having decided that the court erroneously reversed the decision of the Commission on the existence of total disability and the average weekly wage, we need not address the claimant's third issue of whether the court's decision deprived the claimant of a decision from the majority of the Commission.

■ Lastly, we address an issue raised by the respondent. The respondent argues that the Commission abused its discretion in failing to reopen proofs to admit the respondent's photographic evidence of the claimant dancing. The respondent requests only that we determine that he has a right to present the additional evidence on remand. Since we do not remand, we need not make any specific finding as to whether the Commission erred in failing to admit the evidence. We note, simply, that under the Act and the decision of the Commission, the respondent may bring future proceedings to show that the claimant is able to return to work and there is work available to him (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(f)), or that there has been a material change in the claimant's disability (Ill. Rev. Stat. 1979, ch. 48, par. 138.19(h)). In any future proceedings, as in the prior proceedings, it will be within the sound discretion of the Commission to admit additional evidence. *Niles Police Department v. Industrial Com.* (1981), 83 Ill. 2d 528, 416 N.E.2d 243.

For the reasons given, the judgment of the circuit court of McLean County is reversed and the award of the Industrial Commission of January 10, 1983, is reinstated.

Judgment reversed and award reinstated.

SEIDENFELD, P.J., and McNAMARA, WEBBER, and KASSERMAN, JJ., concur.