THE CITY OF GREEN ROCK, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Howard Green, Appellee).

Third District (Industrial Commission Division) No. 3—93—0202WC

Opinion filed December 23, 1993.

John A. Hoekstra, of Katz, McAndrews, Balch, Lefstein & Fieweger, of Rock Island, for appellant.

John H. Westensee, of Braud, Warner, Neppl & Westensee, of Rock Island, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Claimant was employed as a seasonal laborer by the City of Green Rock (City) to remove trees and brush from City property. He suffered a compensable injury to his knee in 1987. Although he returned to work in 1988, he was not recalled by the City in the spring of 1989 after being laid off the previous fall due to inclement weather. Because of his lack of education and employment skills and his inability to find other employment, the arbitrator determined claimant fell within the "odd-lot" category and was permanently and totally disabled. The Industrial Commission (Commission) affirmed the arbitrator and the circuit court confirmed the Commission. Respondent appeals, contending the Commission's determination that claimant was permanently and totally disabled because he falls within the "odd-lot" category of disabled employees is against the manifest weight of the evidence.

At arbitration in 1990, claimant testified that he was 52 years of age when he injured his knee in 1987. He believed that he had completed the third or fourth grade. He had once been a member of the National Guard but was "mustered out" when he could not pass any of the tests. Most of his employment history was devoted to cutting down trees, foundry work, lifting weights and molds, and janitorial work.

Claimant was hired in 1984 by the City to clear brush and trees from its "canal" project. He normally worked nine months of the year as a seasonal employee until it became too cold to work outside. He injured his knee in August 1987 when he slipped on a drain in a ditch. The injury required surgery and claimant was in a cast for 9 to 10 weeks. In February 1988, his physician prescribed a

knee brace and returned him to work in March 1988 with a light-duty restriction.

When he returned to work, claimant was assigned to act as "foreman" over a group of job-training employees who were clearing brush from the canal. Although claimant did not perform heavy work, he, too, would cut underbrush from the banks of the canal. Prior to his injury, claimant would lift tree branches or trunks weighing 75 to 100 pounds. After his injury, his weight restriction was 15 pounds.

When the canal project ended in 1988, the city council decided to have all employees reapply for positions. Clarence Kelley, supervisor of public works, stated that he told claimant, in response to questioning in the spring of 1989, that claimant had to reapply because his previous job had "come to an end." Kelley conceded that the City still performs tree work when trees die or are blown down during storms. General park maintenance staff remove these trees. Kelley concluded that the City did not have any work available for claimant for which he was qualified.

On cross-examination, Kelley admitted there were still a number of job-training employees cleaning brush and cutting weeds in the canal every year because there was always brush to be removed.

When claimant returned to work after his injury, he walked with a stiff leg and a limp, and although he originally had a lifting restriction, Kelley noted the restriction was removed by the end of 1988. Kelley also agreed that after claimant returned to work following his injury, he did not miss any time off from work because of his injury.

Although claimant filled out a new application, Kelley did not know if the city council had considered him for a new job. Kelley did not recommend claimant for any other job but it was not because of his leg injury. Claimant was not recalled to work the following spring.

Claimant testified that he had tried looking for jobs to no avail and was still looking. Although he had been cutting down trees most of his adult life, he had never turned down work. He testified he applied five times at a packing plant but had never been contacted about work.

On cross-examination claimant stated that prior to working for the City he was employed by International Harvester on the assembly line before the plant closed. Prior to that he had been a spot welder for a body shop for a number of years and, before that, a laborer for two other employers. Claimant performed tree work as a

sideline throughout this period. Claimant admitted he was never told by prospective employers that he was not being hired because of his knee condition.

Because claimant cannot read or write, his wife fills out employment applications for him. On redirect, claimant stated that when he applied for jobs, he would take the application home and his wife would fill it out for him. When he was originally hired by the City there was no written contract. Claimant stated that tree work was still being done on the canal project.

A physician's report from August 1988 disclosed that claimant underwent surgery to repair tears in the lateral cartilage, medial meniscus, and other deficiencies in claimant's right knee. One year following surgery, claimant was still experiencing pain in the right knee and stiffness. Among the continuing complaints were that claimant could sit still for only 15 to 20 minutes. He had to be careful using a ladder and had to use a handrail to negotiate stairs. Claimant could not run but could skip. He had to wear a knee brace at all times and walked with a limp. The knee would swell occasionally and claimant experienced cramping and soreness by the end of the day. An uncomfortable rash had also developed at the site of the injury. The doctor's prognosis for further recovery was guarded.

A rehabilitation psychological report dated August 1989 was admitted into evidence by claimant. It reveals that he demonstrated a full scale IQ of 73, which placed him in the borderline range of intellectual functioning. Retention of verbal learning ability was significantly below average. Claimant lacked education and basic reading skills and his capacity to retain new information was limited irrespective of whether it was presented in writing or auditorily. The report concluded that claimant's potential for vocational retraining was extremely limited and, although he might return to work in the same job he held with the City with some physical restrictions, the psychologist who prepared the report "did not see what else he could be trained to do."

An October 1989 vocational assessment prepared by the Work Fitness Center was admitted into evidence by claimant. It described his physical restrictions as no bending/stooping, squatting/crouching, climbing/balancing, kneeling, twisting or crawling, a weight restriction of 20 pounds, avoidance of extremes of cold, heat and temperature, and intermittent standing or walking up to two hours per day. Based on these restrictions, the report found claimant's potential jobs were limited to light-duty or sedentary positions as those were defined by the Department of Labor. The vocational back-

ground section of the report recorded that claimant went to school until about the third grade, he could not read or write, and, other than early work on a family farm, his only adult employment experiences included tree trimming and manual labor.

The rehabilitation counselor rejected potential job positions of grounds keeper, assembler on a production line, welder, and industrial cleaner on the basis that each of these jobs had demands greater than that which claimant was physically able to tolerate. The report also detailed claimant's scores on a battery of tests designed to evaluate physical and mental skills. Claimant consistently scored well below normal.

Although the counselor identified several potential jobs which claimant was able to perform, such as textile sewing machine operator, packing/filling machine operator, assembler, mail preparing/paper handling machine operator, and hand packer, the counselor concluded that claimant would require extensive training to address competitive production standards which he might never be able to meet in certain environments. Beyond his physical restrictions, claimant was further limited by deficits in his job-seeking skills because he was unable to complete a job application due to an inability to read. The counselor's conclusion was that the process for placement in the work force could prove to be very lengthy with only a marginal potential for success.

Respondent presented a report from its rehabilitation consultant, who considered claimant's condition in March 1990. The consultant, who reviewed prior reports from the vocational and rehabilitation counselors, concluded that the information provided was conflicting because claimant had been able to return to work in 1988 even though his physician observed significant physical restrictions sometime later in 1989. The consultant recommended a further functional capacity evaluation to document exactly what claimant was able or unable to do.

The arbitrator awarded claimant temporary total disability benefits and found him completely and totally disabled for life based upon his physical restrictions and limited intellectual capacity. The arbitrator noted that claimant's vocational assessment report showed that due to his limited capacities he did not qualify for any of 66 occupational groups considered by the counselor.

On review, the arbitrator's decision was affirmed. The Commission concluded that claimant fell within the "odd-lot" category because of his age, an IQ of 73, his inability to read and write, and prior work experience, which was limited to heavy, unskilled labor.

The Commission made the further finding that claimant had engaged in a diligent but unsuccessful job search and respondent had failed to introduce any evidence that work was reasonably available within claimant's restrictions. The Commission's decision was confirmed by the circuit court.

Respondent contends the Commission's determination that claimant is permanently and totally disabled is against the manifest weight of the evidence because claimant's right knee injury was surgically repaired and claimant's residual loss of function in the knee is not completely disabling. This argument overlooks the fact that neither the arbitrator nor the Commission found that the injury, standing alone, rendered claimant permanently and totally disabled.

Instead, the Commission, relying on claimant's limited functional and mental capacity, determined he fell within the "odd-lot" category. The standard in this area is well settled:

> " 'An employee is totally and permanently disabled under workers' compensation law where he is unable to make some contribution to industry sufficient to justify payment of wages to him. [Citation.] He must show that he is, for practical purposes, unemployable. [Citation.] A person need not be reduced to a state of total physical helplessness, but is totally disabled when he cannot perform services except those that are so limited in quantity, dependability or quality that there is no reasonably stable market for them. [Citation.]
>
> The employee bears the burden of proving each element of his case, including the extent and permanency of the injury. [Citation.] It is within the province of the Commission to determine the factual issues, to decide the weight to be given to the evidence and reasonable inferences to be drawn therefrom, and to assess the credibility of witnesses. The Commission's determination of these issues will not be set aside unless it is against the manifest weight of the evidence.' "
> (*Hallenbeck v. Industrial Comm'n* (1992), 232 Ill. App. 3d 562, 568-69, 597 N.E.2d 797, 801, quoting *Marathon Oil Co. v. Industrial Comm'n* (1990), 203 Ill. App. 3d 809, 815-16, 561 N.E.2d 141, 146.

In *Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 546-47, 419 N.E.2d 1159, 1163, the court stated:

> "Under *A.M.T.C.*, if the claimant's disability is limited in nature so that he is not obviously unemployable, or if there is no medical evidence to support a claim of total disability, the

burden is upon the claimant to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the 'odd-lot' category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market [citation], then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant [citation]."

Respondent contends claimant did not demonstrate he falls within the "odd-lot" category because he made no showing of a diligent job search. Respondent points to the fact that claimant testified to making a number of applications but on cross-examination stated he had not looked for new employment during the eight months prior to arbitration. Respondent contends this is not the "diligent" job search required under *Valley Mould*. Respondent also contends that because one of claimant's vocational counselors identified potential job classifications which claimant could fill, claimant has failed to prove he is unfit to perform work or that he could not become regularly employed in any well-known branch of the labor market. These arguments are without merit.

The evidence before the Commission showed claimant was 52 years of age at the time of the accident. He had, at most, a third-grade education and was functionally illiterate. Claimant possesses an IQ of 73, which is borderline for intellectual functioning. One counselor determined that because of claimant's lack of intellectual capacity, he could not qualify for any of 66 known job titles or specifications as defined by the Department of Labor. All of the former jobs which claimant has held as an adult as a laborer, foundry worker, or tree cutter appeared to require manual skills beyond claimant's current physical restrictions.

Even the job classifications which one counselor identified as potentially suitable for claimant were not recommended without limitations. Although the counselor believed claimant might be able to assume these jobs, it was clear claimant would need extensive training to learn the jobs and, in a competitive assembly-line operation, the counselor doubted whether claimant could keep up with productivity demands. In short, although claimant was theoretically qualified to hold these positions, the counselor doubted, as a practical matter, whether claimant could compete successfully for the jobs because of his limited intellectual capacity.

As for the issue of claimant's diligence in a job search, while it was true claimant stated that he did not reapply for a job during the eight months prior to arbitration, his testimony was unrebutted that he placed a number of applications, filled out by his wife, with various employers, all without success. There is no evidence claimant disregarded potential employment opportunities or refused work which was offered to him. The question of how long a search must continue before it becomes apparent that the possibility for realistic employment is futile is one of fact for the Commission. Claimant met the burden of showing that he was unemployable, although not because of his medical condition alone. Respondent's own witness, the supervisor of public works, testified that the City did not have any work available for claimant for which he was qualified. Based on claimant's evidence, we conclude that under *Valley Mould* the burden shifted to respondent to show that claimant was employable. This burden was not met. Not only did the City have no jobs available within claimant's limitations, respondent failed to show that any of the theoretical job titles for which claimant was qualified were regularly and continuously available to claimant within the geographical area around the City.

As we have indicated, the question is one of fact for the Commission. In this case, claimant presented sufficient evidence under the standard set forth in *Valley Mould* from which the Commission could conclude that he was permanently and totally disabled because he fell within the "odd-lot" category of employees. That decision is not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the Rock Island circuit court is affirmed.

Affirmed.

RAKOWSKI, WOODWARD, SLATER, and RARICK, JJ., concur.