PEABODY COAL COMPANY, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (Bill Nelson, Appellee).

Fifth District (Industrial Commission Division)    No. 5—92—0845WC

Opinion filed March 28, 1994.

RARICK, J., dissenting.

William Lemp, of Keefe & De Pauli, P.C., of Fairview Heights, for
appellant.

Robert Schey & Associates, of Chicago, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Bill Nelson (claimant) filed an application for adjustment of claim
under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch.
48, par. 138.1 *et seq.*) alleging that he sustained an accidental injury
on May 13, 1987, arising out of and in the course of his employment
with Peabody Coal Company (employer). The arbitrator awarded the
claimant 79 weeks of temporary total disability (TTD) and $685 in
medical expenses. The arbitrator further found that the claimant
was permanently totally disabled under section 8(f) of the Act (Ill.

Rev. Stat. 1985, ch. 48, par. 138.8(f)), that his average weekly wage was $518.12, and that he was not entitled to additional compensation under sections 19(k) and (l) and section 16 of the Act (Ill. Rev. Stat. 1985, ch. 48, pars. 138.16, 138.19(k), 138.19(l)). On review before the Industrial Commission (Commission), the arbitrator's denial of penalties was upheld, but the claimant's average weekly wage was increased to $644.85 with a corresponding increase in TTD to $429.70. The Commission also reduced the award of permanent total disability to partial disability (PPD) to the extent of 50% of a man as a whole pursuant to section 8(d)(2) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(d)(2)). The Commission calculated the PPD award on a rate of $386.73. On appeal before the circuit court, the claimant requested that the court reverse the Commission's modification of the permanency award, and the employer requested that the court affirm the Commission's decision regarding permanency but modify the incorrect rate. The court reinstated the arbitrator's finding of permanent total disability but did not address the employer's allegation that the permanency rate was incorrect. The issues on appeal are: (1) whether the decision of the Commission that the claimant was not permanently totally disabled was against the manifest weight of the evidence; and (2) whether the Commission's calculation of the permanency rate for the claimant's injury was error where it exceeded the statutorily mandated maximum rate established at the time of the accident.

The claimant, who was 50 years old at the time of the arbitration hearing, had a ninth-grade education and had always worked as a laborer. He worked for the employer for 22 years before the accident, and for the last 13 years he worked as a diesel mechanic. The claimant testified that he spent 90% of his time repairing heavy equipment which required climbing ladders and using heavy tools and machinery.

On May 13, 1987, the claimant injured his back while using an A-bar as a pry to lift the undercarriage of a D-8 dozer. He was initially treated by his family physician, who referred him to Dr. John Hubbard. Dr. Hubbard testified that the claimant had a prior work-related injury to his lower back in 1984 which resulted in a laminectomy at the L5-S1 level. The back injury in 1987 occurred in the same area. When conservative treatment failed, the claimant underwent a second laminectomy at the L5-to- S1 level. He continued treatment with Dr. Hubbard and returned to work on September 9, 1987, without any restrictions. Although the claimant continued working as a diesel mechanic until June 1988, he testified that the quality and quantity of his performance were much lower than they had been before his accident.

On March 8, 1988, the claimant returned to Dr. Hubbard complaining of pain in his right hip radiating down his right leg. He had similar complaints when he saw him on June 8, 1988. A CT scan performed at that time showed only degenerative changes in the joints near the area where he had undergone surgery, but according to Dr. Hubbard's testimony, there was no new impinging lesion. Dr. Hubbard diagnosed the claimant's condition as sciatic neuritis with a residual nerve-root irritability of the S1 nerve root on the right side. According to Dr. Hubbard, the claimant's condition could get progressively worse, and it was aggravated by his work as a diesel mechanic. Therefore, he was unable to function in his former position.

The claimant was also examined by Dr. Mehra, at the request of the employer's insurance company. It was Dr. Mehra's opinion that the claimant could no longer perform his former job. Dr. Robert Kuhlman, a board-certified orthopedic surgeon, examined the claimant on three occasions at the request of the employer. In his report on June 6, 1989, Dr. Kuhlman stated that the claimant "appears able to work on a purely objective basis[:] however[,] he may experience backache as outlined previously when required to do any bending, lifting and stooping." Dr. Kuhlman also noted that the claimant would be unable to perform his former job if it caused him too much pain, but that he was capable of working in a job that did not require any heavy lifting, bending, or stooping.

The employer contends that the determination of the Commission that the claimant was permanently partially disabled rather than totally disabled was not against the manifest weight of the evidence and that it was error for the circuit court to reverse the Commission on administrative review. The arbitrator initially found that the claimant was permanently totally disabled, the Commission reversed and concluded that the claimant was permanently partially disabled to the extent of 50% of a man as a whole, and the circuit court reversed and reinstated the arbitrator's finding of permanent total disability.

The employee bears the burden of proving all of the elements of his case, including the extent and permanency of the injury. It is within the province of the Commission to determine the factual issues, to decide the weight to be given to the evidence and the reasonable inferences to be drawn therefrom, and to assess the credibility of witnesses. The Commission's determination of these issues will not be set aside unless it is against the manifest weight of the evidence. (*Marathon Oil Co. v. Industrial Comm'n* (1990), 203 Ill. App. 3d 809, 815-16, 561 N.E.2d 141, 146.) An employee is totally and

permanently disabled under workers' compensation law when he is unable to make some contribution to industry sufficient to justify payment of wages. In order to meet his burden of proof, he must show that he is, for practical purposes, unemployable. However, a person need not be reduced to a state of total physical helplessness but is considered totally disabled when he cannot perform any services except those which are so limited in quantity, dependability, or quality that there is no reasonably stable market for them. (*Marathon Oil Co.*, 203 Ill. App. 3d at 815, 561 N.E.2d at 146.) In determining whether an employee may perform any useful services, "his age, training, education, and experience *must* be taken into account." (Emphasis in original.) (*Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 546, 419 N.E.2d 1159, 1163.) The *Valley Mould* court addressed the discussion of this issue in *A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* and stated:

"The effect of *A.M.T.C.* was not to change the definition of permanent disability *** but merely to allocate the burden of proof as between the employer and the injured employee. Under *A.M.T.C.*, if the claimant's disability is limited in nature so that he is not obviously unemployable, or if there is no medical evidence to support a claim of total disability, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the 'odd-lot' category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market [citation]) then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant [citation]." (*Valley Mould & Iron Co.*, 84 Ill. 2d at 546-47, 419 N.E.2d at 1163, citing *A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 397 N.E.2d 804.)

Where an employee does not make out a case which shifts the burden of proof to the employer, it is incumbent upon him to show that in view of his present position, age, experience, training, and education, he is permanently and totally disabled. This burden may be met by a showing of diligent but unsuccessful attempts to find work or by proof that because of the above-mentioned qualities he is unfit to perform any but the most menial tasks for which no stable market exists. *Valley Mould*, 84 Ill. 2d at 547, 419 N.E.2d at 1163.

In the case *sub judice*, the Commission considered the deposition testimony of claimant's treating physician, Dr. Hubbard, and the employer's expert, Dr. Kuhlman, as well as the consultation report of Dr. Mehra, the physician referred by the employer's insurance

company. Both Dr. Hubbard and Dr. Mehra were of the opinion that the claimant was physically unable to perform his former job as a diesel mechanic. Although Dr. Kuhlman testified that the claimant was capable of returning to work, he noted that the claimant could not function in a job which involved heavy lifting, bending, or stooping. He also acknowledged that he was not familiar with the work claimant was required to perform in his former position. In addition to the medical evidence, the Commission also considered the fact that the claimant was 48 years old at the time of the accident, that he had a ninth-grade education, and that his work experience was as a laborer, performing factory and foundry work.

■ The claimant argues that based on the limitations and restrictions which resulted from his injury, he is no longer able to perform any physical labor. Thus, the only work available would be some form of sedentary work which he has neither the education nor experience to perform. However, as the majority of the Commission noted, none of the physicians who evaluated the claimant's condition indicated that the claimant would be unable to perform *any* job or that he was totally disabled. Thus, even though the claimant did present evidence of his physical limitations, as well as those resulting from his age, ninth-grade education, and lack of work experience, we cannot say as a matter of law that he could not be employed in any well-known branch of the labor market. (*Valley Mould & Iron Co.*, 84 Ill. 2d at 546-47, 419 N.E.2d at 1163.) Because the claimant failed to make a *prima facie* showing of odd lot, the burden of proof remained with him to show the unavailability of employment to a person in his circumstance. As such, it was incumbent upon the claimant to present evidence that he made diligent but unsuccessful attempts to find work or that because of his condition, he is unfit to perform any but the most menial tasks.

The claimant presented no evidence that he made any attempt to either return to the mine in a different position or find other employment within his physical limitations. As previously stated, because we cannot say as a matter of law that the claimant could not be employed in any well-known branch of the labor market, the Commission's determination that the claimant was not permanently totally disabled was not against the manifest weight of the evidence. Although these facts might support the conclusion urged by the claimant, we cannot characterize that conclusion as clearly apparent. Accordingly, the circuit court's reversal of the Commission's decision was error.

■ The employer next contends that the Commission's calculation of the PPD rate is incorrect because it exceeds the statutory

maximum rate established at the time of the claimant's injury. The relevant statute states in pertinent part: "The maximum weekly compensation rate for the period of July 1, 1984, through June 30, 1987, except as hereinafter provided, shall be $293.61." (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(b)(4); *Organic Waste Systems v. Industrial Comm'n* (1993), 241 Ill. App. 3d 257, 261, 608 N.E.2d 1243.) Because the claimant's injury in the case *sub judice* occurred on May 13, 1987, this provision establishes the maximum permanency rate. Therefore, the rate of $386.73 which was calculated by the Commission is incorrect and should be reduced to $293.61 pursuant to section 8(b)(4) of the Act.

Accordingly, the judgment of the circuit court reversing the decision of the Commission on the issue of the claimant's permanent disability is reversed, and the Commission's decision is reinstated. In addition, the permanency rate for claimant's injuries is reduced to $293.61 pursuant to the provision of section 8(b)(4) of the Act.

Reversed.

McCULLOUGH, P.J., and WOODWARD and SLATER, JJ., concur.

JUSTICE RARICK, dissenting:

Because I believe the evidence supports an award of total and permanent disability, I dissent.

As the majority correctly recognizes, in determining a claimant's employment potential, his age, training, education, and experiences are to be taken into account. (*Ceco Corp. v. Industrial Comm'n* (1983), 95 Ill. 2d 278, 287, 447 N.E.2d 842, 845; *A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 489, 397 N.E.2d 804, 807.) I do not believe, however, these factors have been properly taken into account in this instance. Claimant, here, was 48 years old when he was injured. He had spent 22 years in coal mining, most of it repairing heavy equipment. He had nine years of schooling and no GED or high school diploma. Claimant's treating physician, Dr. Hubbard, believed claimant could no longer work in his former job. Dr. Mehra, a consulting neurologist, diagnosed an L5 radiculopathy which was substantiated by a positive EMG. He too believed claimant could not return to his old job and, in fact, opined claimant could not work in any job requiring lifting, pushing, pulling, stooping, or prolonged sitting or standing. Even Dr. Kuhlman, employer's expert, acknowledged that bending, stooping, and lifting would cause problems for claimant, to the extent he probably could no longer

work as a diesel mechanic. Under such circumstances, I agree with the dissenting Commissioner that claimant falls into the "odd-lot" category of employees who are entitled to benefits because their age, education, experience, and injuries render them unemployable. (See *Valley Mould & Iron v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 419 N.E.2d 1159.) Claimant's age, limited education, and entire work history as a laborer limit him to precisely the work he physically can do no longer. For these reasons, I would affirm the decision of the circuit court.