JACK ALANO, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*
(The County of Cook, Appellee).

First District (Industrial Commission Division)   No. 1—95—0540WC

Opinion filed June 7, 1996.—Rehearing denied August 12, 1996.

■■■■■■■■■■■■■■■■■■

COLWELL, J., specially concurring.
RARICK, J., dissenting.

■■■■■■■■■■■■■■■■■■

Michael D. Gerstein, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Patricia Shymanski and Donald R. Havis, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The employee, Jack Alano (claimant), filed an application for adjustment of claim pursuant to the Worker's Compensation Act (the Act) (Ill. Rev. Stat. 1983, ch. 48, par. 138.1 *et seq.* (now 820 ILCS Ann. 305/1 *et seq.* (Michie 1995))) for injuries he allegedly sustained while working for the County of Cook (employer). Following a hearing, the arbitrator found the claimant eligible for temporary total disability (TTD) benefits and for permanent partial disability (PPD) benefits to the extent of 45% of the person as a whole. The Illinois Industrial Commission (Commission) modified the arbitrator's decision and ordered the employer to make payments for 125 weeks as provided under section 8(d)(2) of the Act because injuries sustained caused permanent partial disability to the extent of 25% of the person as a whole. The circuit court of Cook County confirmed the decision of the Commission. The claimant appeals, maintaining that he should have been found totally and permanently disabled. We affirm.

The claimant drove a truck for the employer for $14^{1}/_{2}$ years. His daily duties included filling potholes, cutting grass and picking up debris. On November 1, 1983, the claimant fell from his truck to the ground, hitting the entire right side of his body, including his leg, knee, ribs, arm, hand and shoulder. On November 3 and 4, 1983, the claimant received physical therapy treatments to his right shoulder from Dr. George Ruis. Shortly thereafter, the claimant began to treat with Dr. Robert Heck, who prescribed heat treatments.

On November 18, 1983, Dr. Heck referred the claimant to Dr. Arthur Rodriguez of the South Side Physical Medical Center for physical therapy. Dr. Hari K. Agrawal, a staff member at South Side,

opined on March 26, 1984, that the claimant could be released to light duty work. Physical therapy was discontinued on April 6, 1984.

The claimant continued treatment with Dr. Heck for pains alleged to have been caused by the accident. On August 31, 1984, Dr. Heck diagnosed Paget's disease, a chronic bone disease, in the claimant's pelvis and right leg.

The claimant was examined on April 17, 1984, at the employer's request by Dr. Melvin Post, chairman of orthopedic surgery at Michael Reese Medical Center. Dr. Post diagnosed arthritis and a torn rotator cuff in the claimant's right shoulder. He opined that surgery might be necessary and that the claimant could "perform light work activities not involving lifting especially in the overhead position in a repetitive manner." Dr. Post performed a follow-up examination on July 17, 1984, after which he opined that "nothing more need[s] to be done if the [claimant] avoids any work activities other than answering a telephone or sitting at a desk using his hands for fine manipulation."

The claimant was next examined by Dr. Sid John Shafer at the respondent's request on October 19, 1984. In his written report, Dr. Shafer noted the claimant's preexisting conditions of Paget's disease and osteoarthritis. Dr. Shafer opined that he "did not feel that the [claimant] is able to return to his regular daily tasks, but of course if a sedentary job is available, he certainly can return to work."

On October 22, 1984, the claimant underwent surgery for the removal of a bladder tumor. The record shows no further examination of the claimant until February 12, 1988, when Dr. Audley Loughran examined the claimant at the request of the employer. Dr. Loughran noted symptoms of Paget's disease and opined that the claimant could return to light duty. The claimant testified that he continued to receive TTD benefits until September 30, 1990.

On January 21, 1991, the claimant was examined at his request by Dr. Samuel J. Chmell. Dr. Chmell testified by evidence deposition that he had diagnosed the claimant's condition as a post-traumatic rotator cuff arthropathy of the right shoulder and exacerbation of degenerative arthritis of the right hip. Dr. Chmell opined that the November 1, 1983, fall was the cause of the claimant's right shoulder problem and an exacerbating factor as to the claimant's right hip. Dr. Chmell further opined that the claimant was "totally and permanently disabled" as a result of his injuries.

The claimant was examined on January 2, 1991, by Dr. William F. Hejna at the request of the employer. Dr. Hejna testified by evidence deposition that the claimant had primary osteoarthritis throughout his spine, right shoulder, right knee and right hip. Dr.

Hejna opined that the claimant's shoulder problem could be related to the accident on November 1, 1983. He further opined, however, that the claimant's neck, hip, and knee problems were the result of osteoarthritis and Paget's disease and were not causally related to the accident. Dr. Hejna further noted his opinion that the claimant was "totally disabled for work purposes on a permanent basis due to his osteoarthritis and Paget's disease."

The claimant testified at the arbitration hearing that daily pain persisted in his knee, shoulder and hip. Before the incident of November 1, 1983, the claimant performed several physical activities without pain. He had two years of high school education and had worked previously as a hotel doorman, car checker and cashier. The claimant, who was 65 years old at the time of the accident, did not look for work of any nature, nor was he offered any light duty by the employer.

■ There is no dispute that the injury arose out of and in the course of the claimant's employment; the only issue is whether the claimant sustained his burden of proving permanent and total disability. The determination of the extent or permanence of a claimant's disability is a question of fact for the Commission to determine, and its decision will not be set aside unless it is against the manifest weight of the evidence. *Hutson v. Industrial Comm'n*, 223 Ill. App. 3d 706, 714 (1992).

■ The claimant has the burden of proving the permanence of his injury by a preponderance of the evidence. *Esposito v. Industrial Comm'n*, 186 Ill. App. 3d 728, 737 (1989). It is well settled that "an employee is totally and permanently disabled *** when he is unable to make some contribution to industry sufficient to justify payment to him of wages." *A.M.T.C. of Illinois, Inc., Aero Mayflower Transit Co. v. Industrial Comm'n*, 77 Ill. 2d 482, 487 (1979). The employee must show that he is unemployable, *i.e.*, unable to perform services except those that are so limited in quantity, dependability or quality that there is no reasonably steady market for them. *Marathon Oil Co. v. Industrial Comm'n*, 203 Ill. App. 3d 809 (1990).

The focus of the Commission's analysis must be upon the degree to which the claimant's medical disability impairs his employability, and "if an employee is qualified for and capable of obtaining gainful employment without seriously endangering [his] health or life, such employee is not totally and permanently disabled." *E.R. Moore Co. v. Industrial Comm'n*, 71 Ill. 2d 353, 361 (1978).

■ A claimant ordinarily satisfies his burden of proving he is not capable of obtaining gainful employment by showing either: (1) that work was not available, *i.e.*, diligent but unsuccessful attempts to

find work (*A.M.T.C.*, 77 Ill. 2d at 490); or (2) that based upon his age, experience, training and education, he is unable to perform any but the most unproductive tasks for which no stable labor market exists (*E.R. Moore*, 71 Ill. 2d at 362). It is clear from the record that the claimant in the matter *sub judice* failed to meet his burden under either of these two tests. It is undisputed that the claimant did not attempt a job search, nor did he introduce any evidence to show that no stable job market existed for any of his services.

■ The claimant contends that he nonetheless satisfied his burden of proof when he presented some medical evidence of total and permanent disability. The claimant relies on *Electro-Motive Division, General Motors Corp. v. Industrial Comm'n*, 240 Ill. App. 3d 768 (1992), where this court stated:

> "If the claimant's disability is limited in nature so that he is not obviously unemployable, *or if there is no medical evidence to support a claim of total disability*, the burden is upon the claimant to establish the unavailability of employment for [any] person in his circumstances. [Citation.] Once the claimant presents medical evidence of his total disability, the burden shifts to the employer to present evidence that some kind of work is regularly and continuously available to such person. See *Ceco Corp. v. Industrial Comm'n* (1983), 95 Ill. 2d 278, 447 N.E.2d 842; *Rowe Construction Co. v. Industrial Comm'n* (1984), 128 Ill. App. 3d 365, 470 N.E.2d 1196." (Emphasis in original.) *Electro-Motive*, 240 Ill. App. 3d at 775.

The claimant maintains that *Electro-Motive* stands for the proposition that the burden of proving unavailability of employment in order to receive a finding of total and permanent disability is only on the claimant if he has presented no medical evidence to support his claim that his injuries are total and permanent. Thus, the claimant argues, he must merely *proffer* medical evidence of permanency to shift the burden to the employer. The claimant maintains that the medical opinions of Dr. Chmell and Dr. Hejna supported his claim of total and permanent disability, shifting the burden to the employer to present evidence that some kind of work was regularly and continuously available to the claimant.

The claimant reads too much into the language quoted from *Electro-Motive*. Our review of the facts in *Electro-Motive* and the cases cited therein leads us to conclude that merely proffering medical evidence of permanency is insufficient to shift the burden. The Commission must make a finding of permanent and total disability based upon the proffered evidence. In each case cited by the claimant, unlike in the matter *sub judice*, the Commission made a finding

that the claimant was permanently totally disabled based upon the proffered medical evidence of permanency, which the Commission specifically found credible. *Electro-Motive*, 240 Ill. App. 3d at 775; *Ceco Corp.*, 95 Ill. 2d at 287-88; *Rowe Construction Co.*, 128 Ill. App. 3d at 370.

We find that the Commission did not err in finding that the burden of proof had not shifted to the employer and therefore the Commission's decision cannot be overturned on that basis.

The claimant next contends that by relying upon obsolete medical opinions, and ignoring more recent opinions, the Commission's finding that he was not entitled to total and permanent disability benefits was against the manifest weight of the evidence. Specifically, the claimant maintains that it was against the manifest weight of the evidence for the Commission to ignore the opinions of Dr. Chmell (March 1991) and Dr. Hejna (April 1991) that the claimant was permanently disabled at the time of their respective examinations and, instead, rely upon the opinions of Dr. Shafer (October 1984), Dr. Loughran (February 1988), Dr. Post (July 1988), and Dr. Shafer (October 1988), all of whom opined that the claimant was capable of light duty. Claimant maintains that the opinions rendered several years prior to the arbitration hearing should have no relevance to the determination of permanency at the time of hearing. We find that the claimant's argument must fail.

■ The resolution of conflicting medical testimony is a question of fact for the Commission and its determination will be upheld unless contrary to the manifest weight of the evidence. *Hutson v. Industrial Comm'n*, 223 Ill. App. 3d 706, 716 (1992). In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Montgomery Elevator Co. v. Industrial Comm'n* (1993), 244 Ill. App. 3d 563, 567.

From our review of the record, we cannot say that the opposite conclusion from that reached by the Commission is clearly apparent. The claimant maintains that the Commission erred in not assigning significant weight to the opinions of Dr. Hejna and Dr. Chmell. We note, however, that even if the Commission had assigned greater weight to these opinions, it cannot be said that the opposite conclusion would have been reached. While Dr. Henja opined that the claimant was permanently disabled, he further opined that only the claimant's shoulder problems could have been caused by the accident. In fact, Dr. Henja's opinion that only the claimant's shoulder injury could be attributed to the accident supports the Commission's conclusion that the claimant's accident resulted in only a partial permanent disability. Thus, Dr. Hejna's opinion cannot be said to support an opposite conclusion from that reached by the Commission.

For the reasons stated above, the judgment of the circuit court of Cook County confirming the decision of the Commission is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, J., concur.

JUSTICE COLWELL, specially concurring:
Although I agree with the majority's holding, I write separately to address factors which I believe are essential to our analysis.

A claimant is entitled to permanent total disability (PTD) benefits if he is obviously unemployable. See *Schoon v. Industrial Comm'n*, 259 Ill. App. 3d 587, 590 (1994). Whether a claimant is obviously unemployable is a factual determination to be made by the Commission, and that determination will not be set aside unless it is against the manifest weight of the evidence. *Peabody Coal Co. v. Industrial Comm'n*, 259 Ill. App. 3d 356, 358 (1994).

If the claimant's disability is limited in nature so that he is not "obviously unemployable," the claimant can prove he is entitled to PTD benefits by presenting medical evidence, *which the Commission finds credible*, that he is permanently and totally disabled. See *Rowe Construction Co. v. Industrial Comm'n*, 128 Ill. App. 3d 365, 370 (1984). The employer, of course, might submit conflicting medical evidence that claimant is not permanently and totally disabled. If this occurs, which it did in the present case, it is for the Commission to determine which medical opinion is more worthy of belief, and that determination will not be set aside unless it is against the manifest weight of the evidence. *Rowe*, 128 Ill. App. 3d at 370.

The claimant argues that merely proffering medical evidence of permanency, whether credible or not, shifts the burden to the employer. If we were to accept the claimant's argument, the long-standing principle that "it is for the Commission to choose between conflicting medical evidence" would simply be words without substance. Furthermore, accepting the claimant's argument would eliminate black letter law that "the claimant has the burden of proving the permanence of his injury by a preponderance of the evidence" because, under the claimant's argument, a claimant could be awarded PTD benefits even though the Commission does not find claimant's medical evidence credible.

The dissent filed herein posits that the majority's holding effectively eliminates the "odd-lot" category of PTD. I disagree with the dissent. Odd-lot only comes into play when the claimant's disability is limited in nature so that he is not obviously unemployable and

when there is no medical evidence to *support* a claim of PTD. See *Valley Mould,* 84 Ill. 2d at 546-47. If those two conditions are present, as in the present case, the claimant has the burden of proving by a preponderance of the evidence that he fits into the "odd-lot" category (one who, though not altogether incapacitated to work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market). *Old Ben Coal Co. v. Industrial Comm'n,* 261 Ill. App. 3d 812, 814 (1994). The claimant can meet his burden that he falls into the odd-lot category by one of two ways: (1) by showing diligent but unsuccessful attempts to find work, or (2) by showing that because of his age, skills, training, and work history, he will not be regularly employed in a well-known branch of the labor market. See *Meadows v. Industrial Comm'n,* 262 Ill. App. 3d 650, 653-54 (1994). Whether a claimant falls into the odd-lot category is a factual determination to be made by the Commission, and that determination will not be set aside unless it is against the manifest weight of the evidence. *City of Green Rock v. Industrial Comm'n,* 255 Ill. App. 3d 895, 902 (1993).

If a claimant meets his burden that he falls into the odd-lot category, the burden of proof shifts to the employer to produce evidence that some type of regular and continuous employment is available to the claimant. *E.R. Moore Co. v. Industrial Comm'n,* 71 Ill. 2d 353, 362 (1978). Once again, the determination of whether the employer met his burden is a factual determination that the Commission makes, and that determination will not be set aside unless it is against the manifest weight of the evidence. *City of Green Rock,* 255 Ill. App. 3d at 902.

The odd-lot category of PTD is not eliminated by the majority's opinion. In the present case, the Commission specifically found that the claimant failed to prove that he fell into the odd-lot category. The fact that claimant failed to prove that he fell into the odd-lot category in this case does not mean that the odd-lot category of PTD is eliminated. Odd-lot was available to the claimant. The Commission simply did not believe that the claimant proved, by a preponderance of the evidence, that he fell into the odd-lot category.

JUSTICE RARICK, dissenting:

I respectfully dissent.

The majority appears to hold that it is not enough for a claimant to merely proffer some medical evidence of permanent and total disability in order to shift the burden to the employer, but that the Commission must actually make a factual finding of permanent and total disability based upon such evidence. The majority's holding

ignores the analytical framework set forth by our supreme court in *Valley Mould & Iron Co. v. Industrial Comm'n* 84 Ill. 2d 538, 419 N.E.2d 1159 (1981), and, in my opinion, effectively eliminates the "odd-lot" category.

Our supreme court had defined permanent and total disability as follows:

> "[A] person is totally disabled when he cannot perform any services except those for which no reasonably stable labor market exists. [Citations.] Conversely, if an employee is qualified for and capable of obtaining gainful employment without seriously endangering health or life, such employee is not permanently and totally disabled. [Citations.]" *E.R. Moore Co. v. Industrial Comm'n*, 71 Ill. 2d 353, 361-62, 376 N.E.2d 206, 210 (1978).

Under *Aero Mayflower Transit Company of Illinois* if an employee's disability is limited in nature so that he is not obviously unemployable, *or* if there is no medical evidence to support a claim of total disability, the burden is on the employee to establish the unavailability of employment to a person in his circumstances. If, on the other hand, the employee can establish a *prima facie* case that although not totally incapacitated for work, he is so handicapped that he will not be employed regularly in any well-known branch of the labor market, he falls into what is termed the "odd-lot" category, and the burden remains on him to establish the unavailability of employment to a person in his circumstances. He may do this in one of two ways: (1) by showing diligent but unsuccessful attempts to find work, or (2) by showing that because of his condition, age, education, training, and experience, he is unfit to perform any but the most menial tasks for which no stable market exists. *Valley Mould & Iron Co. v. Industrial Comm'n*, 84 Ill. 2d 538, 419 N.E.2d 1159 (1981), citing *A.M.T.C. of Illinois, Inc., Aero Mayflower Transit Co. v. Industrial Comm'n*, 77 Ill. 2d 482, 397 N.E.2d 804 (1979); *Sterling Steel Casting Co. v. Industrial Comm'n*, 74 Ill. 2d 273, 384 N.E.2d 1326 (1979); *E.R. Moore Co. v. Industrial Comm'n*, 71 Ill. 2d 353, 376 N.E.2d 206 (1978); *Interlake Steel Corp. v. Industrial Comm'n*, 60 Ill. 2d 255, 326 N.E.2d 744 (1975). A *prima facie* case is one in which a party has brought forth sufficient evidence such that a finding in that party's favor could be supported if contrary evidence were ignored. See *Shelter Mutual Insurance Co. v. Bailey*, 160 Ill. App. 3d 146, 513 N.E.2d 490 (1987). Black's Law Dictionary 1353 (4th ed. 1968).

As *Valley Mould* makes clear, a claimant need only make out a *prima facie* case that he falls into the "odd-lot" category in order to shift the burden of proof to the employer. The majority's position, however, is that the medical evidence must prove permanent and

total disability in order to shift the burden. But if the medical evidence is such that it proves a claimant to be totally and permanently disabled, then there would be no need to apply the "odd-lot" analysis to determine whether the claimant is permanently and totally disabled because the medical evidence has already proven this.

I would hold that the opinions of Dr. Chmell and Dr. Hejna coupled with claimant's testimony were sufficient to shift to the employer the burden of demonstrating that some kind of suitable work was regularly and continuously available. For these reasons, I dissent.